Alan Steven Wolf – Bar No. 94665
Caren Jacobs Castle – Bar No. 93888
Daniel K. Fujimoto – Bar No. 158575
Mark T. Domeyer – Bar No. 135008
Scott J. Jackson – Bar No. 219157
THE WOLF FIRM, A Law Corporation
2955 Main Street, Second Floor
Irvine, CA 92614
Telephone:  (949) 720-9200
Fax:  (949) 608-0128

Attorneys for Creditor, Bank of America, N.A.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| In re: | CASE NO:  1:15-bk-12195-MT |
|---|---|
| Michael Dale Miller, | CHAPTER:  13 |
| Debtor. | **OPPOSITION TO MOTION IN INDIVIDUAL CASE FOR ORDER IMPOSING A STAY OR CONTINUING THE AUTOMATIC STAY** |
| | Date: July 22, 2015<br>Time: 9:30 a.m.<br>Ctrm: 302<br>U.S. Bankruptcy Court<br>210741 Burbank Blvd., Woodland Hills, CA |

Bank of America, N.A. ("BANA") opposes Debtor's Motion in Individual Case for

Order Imposing a Stay or Continuing the Automatic Stay (the "Stay Motion,") and sets

forth as follows:

### <u>INTRODUCTION</u>

Debtor does not provide evidence to overcome the presumption of bad faith by

clear and convincing evidence, and therefore the Court should deny his motion.

///

///

- 1 -
OPPOSITION TO MOTION IN INDIVIDUAL CASE FOR ORDER IMPOSING A STAY OR CONTINUING THE
AUTOMATIC STAY
507-9780

1

## **STATEMENT OF FACTS**

2    On September 29, 2007 Debtor executed a promissory note in the original

3 amount of $417,000.00 secured by a first position deed of trust recorded on September

4 25, 2007 in the official records of Los Angeles County, California against the Debtor's

5 residence located at 9540 Burnet Avenue, North Hills, CA 91343-2309 (the "Property.")

6 On October 27, 2011 BANA caused to be recorded a Notice of Default and Election to

7 Sell.  On February 1, 2012 BANA caused to be recorded a Notice of Trustee's Sale

8 setting a foreclosure sale for February 24, 2012.

9    On March 23, 2012, Debtor filed his first Chapter 13 petition as case no. 1:12-bk-

10 12762-VK. BANA filed its proof of claim as Claim no. 2 on May 10, 2012 listing

11 $40,070.36 in arrears. On March 25, 2013 BANA filed a motion for relief from the

12 automatic stay for Debtor's failure to make post-petition payments, which was granted

13 via order entered on June 3, 2013. This case was dismissed on July 18, 2013 for

14 Debtor's failure to make plan payments.

15    On August 5, 2013 BANA caused to be recorded a new Notice of Trustee's Sale

16 setting a foreclosure sale for August 28, 2013.

17    On August  26. 2013, Debtor filed his second Chapter 13 petition as Case No.

18 1:13-bk-15594-MT. BANA filed its Proof of Claim as Claim No. 6 on January 14, 2014

19 listing arrears in the amount of $89,038.27. Debtor's plan was confirmed on September

20 8, 2014. BANA filed a motion for relief from the automatic stay on November 10, 2014

21 for Debtor's failure to make post-petition payments, and a stipulated adequate

22 protection order was entered on December 22, 2014. This case was dismissed on April

23 28, 2015 for Debtor's failure to make plan payments.

24    On June 24, 2015 Debtor filed his third and current Chapter 13 petition. In his

25 motion to extend the automatic stay Debtor asserts that his previous case was

26 dismissed because his business experienced an "extended and unexpected lull," and

27 that he believes that he will be able complete a Chapter 13 plan because he has

28    OPPOSITION TO MOTION IN INDIVIDUAL CASE FOR ORDER IMPOSING A STAY OR CONTINUING THE
AUTOMATIC STAY
507-9780

1 restructured his budget and taken on an additional renter. BANA has not yet filed a

2 proof of claim in Debtor's current case; however, the estimated arrears in BANA's proof

3 of claim are now $124,679.33.

4 **DISCUSSION**

5 **A.    Debtor Has Not Met His Burden of Proof of Showing That This Case**

6 **Is Filed In Good Faith**

7 **1.    Debtor Has Not Rebutted The Presumption of Bad Faith As to All**

8 **Creditors**

9 Pursuant to 11 U.S.C. §362(c)(3)(A), because the Debtor had one prior Chapter

10 11 bankruptcy case pending in the one year period preceding the filing of his current

11 Chapter 13 bankruptcy petition, the automatic stay with respect to a debt or property

12 securing such debt shall terminate on the 30th day after the filing of the current case. On

13 the 30th day the stay will terminate as to both the Debtor and as to property of the

14 estate. Reswick v. Reswick (In re Reswick), 446 B.R. 362 (9th Cir. BAP 2011).

15 The court may extend the stay as to any or all creditors, subject to any limitations

16 imposed by the court, upon a motion heard before the 30 day period expires, but only if

17 the moving party demonstrates that the current case is filed in good faith as to the

18 creditors to be stayed. 11 U.S.C. §362(c)(3)(B). A case is presumptively filed not in

19 good faith as to all creditors is more than one previous case in which the individual was

20 a debtor was pending within the preceding one-year period, 11 U.S.C.

21 §362(c)(3)(C)(i)(I), or where the previous case was dismissed due to Debtor's failure to

22 perform the terms of a confirmed plan. 11 U.S.C. §362(c)((3)(C)(i)(II)(cc). The

23 presumption of bad faith may only be rebutted by clear and convincing evidence to the

24 contrary. 11 U.S.C. §362(c)(3)(C).

25 The Debtor bears the burden of proof of establishing that the second case is filed

26 in good faith. In re Elliott-Cook, 357 B.R. 811, 814 (Bankr. N.D. Cal. 2006). Here Debtor

27 presents scant evidence, much less clear and convincing evidence, to rebut the

- 3 -

28

presumption of bad faith. In support of his motion Debtor provides a declaration stating

that he has chosen to "restructure my budget completely to be able to save my home. I

also now have a tenant in the guest home, providing additional rental income."

What Debtor does not provide is any evidence of how his income now differs

from what it was when "my business experienced an extended and unexpected lull." In

all three cases Debtor's income comes from his business as a self-employed insurance

broker. In his first case, Debtor listed $5,000 in income from his business, and $2,200 in

income from real property. In his second case, $4,500 in business income and $2,200 in

rental income. In his current case, Debtor lists $5,980 in net business and rental

income, and $700 in rents from the guest house. From his Form 22C-1, it appears that

the $5,980 consists of $4,000 in business income and $1,980 in rental income. In other

words, Debtor's income has not really changed much. As discussed below, the

evidence indicates that the Debtor has consistently been unable to repay his debts

while in Chapter 13, and Debtor's proffered evidence in his motion does not rise to the

level of clear and convincing evidence to overcome the presumption of bad faith.

### 2.    Debtor Has Not Rebutted the Presumption of Bad Faith as to BANA

A case is presumptively filed in bad faith as to any creditor who sought relief from

the automatic stay in an individual debtor's previous case, and that action was still

pending or had been resolved by terminating, conditioning, or limiting the stay when the

case was dismissed. 11 U.S.C. §362(c)(3)(C)(ii). In Debtor's previous case, BANA filed

a motion for relief from the automatic stay which resulted in an order conditioning the

stay entered on June 3, 2013. Therefore, Debtor's current case is presumptively filed in

bad faith as to BANA.

Debtor has provided no evidence to rebut the presumption as to BANA. In fact,

the evidence is that since the Debtor filed his first petition in March, 2012, Debtor's

failure to make payments has caused the arrears owed to BANA to more than triple

over the three years that Debtor has been in one Chapter 13 bankruptcy or another. In

- 4 -

OPPOSITION TO MOTION IN INDIVIDUAL CASE FOR ORDER IMPOSING A STAY OR CONTINUING THE
AUTOMATIC STAY

507-9780

1  Debtor's first bankruptcy case, Debtor owed $40,070.36 in pre-petition arrears to BANA.

2  In his second case filed in August, 2013, the arrears to BANA the arrears had risen to

3  $89,038.27. BANA has not yet filed its proof of claim in this case; however, the

4  estimated arrearages in its proof of claim will be $125,679.33. Despite having effectively

5  been in Chapter 13 bankruptcy for over three years, Debtor has not reduced the

6  amounts owed to BANA, but has only made them worse. As Debtor has failed to rebut

7  the presumption as to BANA, the Court should not extend the stay as to BANA.

8  <u>**CONCLUSION**</u>

9        For all of the above reasons BANA respectfully requests that the Court deny

10  Debtor's motion to extend the automatic stay as to all creditors. Alternatively, BANA

11  requests that the Court decline to extend the stay as to BANA.

12

13  Date:  July 13, 2015                     Respectfully submitted,

14                                           THE WOLF FIRM,

15                                           A Professional Law Corporation

16

17                                           By:  <u>/s/ Daniel K. Fujimoto</u>
                                                  Daniel K. Fujimoto

18                                                Attorneys for Creditor
                                                  Bank of America, N.A.

19

20

21

22

23

24

25

26

27

28  OPPOSITION TO MOTION IN INDIVIDUAL CASE FOR ORDER IMPOSING A STAY OR CONTINUING THE
AUTOMATIC STAY

507-9780

1  Alan Steven Wolf – Bar No. 94665
   Caren Jacobs Castle – Bar No. 93888
2  Daniel K. Fujimoto – Bar No. 158575
   Mark T. Domeyer – Bar No. 135008
3  THE WOLF FIRM, A Law Corporation
   2955 Main Street, Second Floor
4  Irvine, CA 92614
   Telephone:  (949) 720-9200
5  Fax:  (949) 608-0128

6  Attorneys for Creditor, BANK OF
   AMERICA, N.A.
7

8
                        UNITED STATES BANKRUPTCY COURT
9
                        CENTRAL DISTRICT OF CALIFORNIA
10
                        SAN FERNANDO VALLEY DIVISION
11

12
   In re:                               CASE NO:  15-12195
13
   Michael Dale Miller                  CHAPTER:  13
14
                        Debtor.         DECLARATION  IN SUPPORT OF
15                                      OPPOSITION TO MOTION IN INDIVIDUAL
                                        CASE FOR ORDER IMPOSING A STAY
16                                      OR CONTINUING THE AUTOMATIC STAY

17                                      Hearing:
                                        Date:       July 22, 2015
18                                      Time:       9:30 a.m.
                                        Courtroom:  302
19
                                        UNITED STATES BANKRUPTCY COURT
20                                      21041 Burbank Boulevard
                                        Woodland Hills, CA  91367-6603
21

22  I, Beverly Heather ___, declare under penalty of perjury as follows:

23       1.    I am a Assistant Vice President of Bank of America, N.A. ("BANA") and am

24  authorized to sign this declaration on behalf of BANA, as Creditor,  with respect to a

25  certain loan (the "Loan") provided to Debtor, which Loan is evidenced by the Note

26  (defined below) and secured by the Deed of Trust (defined below).

27       2.    As part of my job responsibilities for BANA, I have personal knowledge of

28  and am familiar with the types of records maintained by BANA in connection with the

                                      - 1 -
   DECLARATION  IN SUPPORT OF OPPOSITION TO MOTION IN INDIVIDUAL CASE FOR ORDER IMPOSING A
                     STAY OR CONTINUING THE AUTOMATIC STAY
   8457-2083

1 | Loan and the procedures for creating those types of records. I have access to and have
2 | reviewed the books, records and files of BANA that pertain to the Loan and extensions
3 | of credit given to Debtor concerning the Property (defined below).

4 |     3.    The information in this declaration is taken from BANA's business records
5 | regarding the Loan. I have personal knowledge of BANA's procedures for creating
6 | these types of records. The records are: (a) made at or near the time of the occurrence
7 | of the matters recorded by persons with personal knowledge of the information in the
8 | business record, or from information transmitted by persons with personal knowledge;
9 | (b) kept in the course of BANA's regularly conducted business activities; and (c) it is the
10 | regular practice of BANA to make such records.

11 |     4.    I am informed and believe that on June 24, 2015, Debtor filed a Chapter
12 | 13 petition and Debtor claims an interest in the property which is security for the debt
13 | owed to BANK OF AMERICA, N.A. This is the 3rd bankruptcy case affecting the subject
14 | property. The prior cases are as follows:

15 |     a. On <u>March 23, 2012,</u> Michael Miller filed a voluntary petition under Chapter
16 | 13 of the United States Bankruptcy Code and was assigned case number 1:12-bk-
17 | 12762-VK. The case was dismissed on <u>July 17, 2013</u>, and terminated on December 20,
18 | 2013. A true and correct copy of the PACER docket entries reflecting this information is
19 | attached hereto as <u>Exhibit "7"</u> and incorporated herein by reference.

20 |     b. On <u>August 26, 2013,</u> Michael Miller filed a voluntary petition under
21 | Chapter 13 of the United States Bankruptcy Code and was assigned case number 1:13-
22 | bk-15594-MT. The case was dismissed on <u>April 28, 2015</u>. A true and correct copy of the
23 | PACER docket entries reflecting this information is attached hereto as <u>Exhibit "8"</u> and
24 | incorporated herein by reference.

25 |     5.    I have examined the files and records of BANK OF AMERICA, N.A.
26 | regarding the Note and Deed of Trust which is the subject of this Objection and have
27 | found the following information to be true:

28 |

- 2 -

DECLARATION IN SUPPORT OF OPPOSITION TO MOTION IN INDIVIDUAL CASE FOR ORDER IMPOSING A
STAY OR CONTINUING THE AUTOMATIC STAY
8457-2083

1        a. The Debtor has executed and delivered that certain promissory note in the

2  original principal amount of $417,000.00 (the "Note"). Movant, directly or through an

3  agent, has possession of the Note. The Note is either made payable to Movant or has

4  been duly endorsed.

5        b. A true and correct copy of the Note is attached hereto as Exhibit "1" and

6  incorporated herein by reference.

7        c. Pursuant to that certain Deed of Trust (the "Deed of Trust"), all obligations

8  (collectively, the "Obligations") of the Debtor under the Note and the Deed of Trust and

9  with respect to the Loan are secured by certain real property (the "Property"). The

10  Property address is 9540 Burnet Avenue, North Hills, CA 91343-2309.

11        d. A true and correct copy of the Deed of Trust is attached hereto Exhibit "2"

12  and incorporated herein by reference.

13        e. Movant is the original mortgagee or beneficiary or the assignee of the

14  Deed of Trust. A true and correct copy of the assignment of deed of trust is attached

15  hereto Exhibit "3" and incorporated herein by reference.

16        f. There was a default under the terms of the Note and Deed of Trust and on

17  October 27, 2011 Movant caused a Notice of Default and Election to Sell ("NOD") to be

18  recorded in the official records of the Los Angeles County Recorder's office. A copy of

19  the NOD is attached hereto as Exhibit "4" and incorporated herein by reference.

20        g. Thereafter, the Notice of Sale ("NOS") was recorded on or about February

21  1, 2012, in the official records of the Los Angeles County Recorder's office, and the

22  foreclosure sale was scheduled for February 24, 2012. A copy of the NOS is attached

23  hereto as Exhibit "5" and incorporated herein by reference.

24        h. Thereafter, the Notice of Sale ("NOS") was recorded on or about August 5,

25  2013, in the official records of the Los Angeles County Recorder's office, and the

26  foreclosure sale was scheduled for August 28, 2013. A copy of the NOS is attached

27  hereto as Exhibit "6" and incorporated herein by reference.

28

1     i.   At the time of the filing of the instant case, the pre-petition arrearages

2  under the Note and Deed of Trust were approximately $125,679.33, which consists of

3  $110,926.15 in delinquent payments, $1,126.00 in Prior Bankruptcy Attorney's Fees,

4  $140.70 in Foreclosure Fees, $0.08 in Property Inspection Fees, and $13,486.40 in

5  Escrow Shortage.

6     j.   The estimated total amount due under Creditor's Note and Deed of Trust

7  as of July 17, 2015, exclusive of post-petition attorneys' fees and costs, was

8  approximately $522,355.89.

9     Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under

10  the laws of the United States of America that the foregoing is true and correct.

11  Executed this 17th day of July 2015 at Simi Valley, CA (city, state).

12

13                                   Heather Bennett
14                                   Assistant Vice President

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 4 -

DECLARATION IN SUPPORT OF OPPOSITION TO MOTION IN INDIVIDUAL CASE FOR ORDER IMPOSING A
STAY OR CONTINUING THE AUTOMATIC STAY
8457-2083

# EXHIBIT  1

Prepared by: CHERIE BRYAN                                                    LOAN ID: REDACTED

# InterestFirst™ ADJUSTABLE RATE NOTE
(One-Year LIBOR Index (As Published In *The Wall Street Journal*)
Rate Caps - 10 Year Interest Only Period)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO
AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE
LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE
MAXIMUM RATE I MUST PAY.

SEPTEMBER 18, 2007                LA MIRADA                      CALIFORNIA
      [Date]                        [City]                         [State]

        9540 BURNET AVENUE, NORTH HILLS, CA 91343-2309
                    [Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 417,000.00      (this amount is called "Principal"), plus
interest, to the order of Lender. Lender is
Countrywide Bank, FSB.
I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive
payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of
6.375 %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default
described in Section 7(B) of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will make a payment on the first day of every month, beginning on  NOVEMBER 01, 2007          . Before the First
Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on
the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided
below.
I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as
described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any
other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and
if the payment includes both principal and interest, it will be applied to interest before Principal. If, on  OCTOBER 01, 2037       ,
I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

MULTISTATE InterestFirst ADJUSTABLE RATE NOTE - ONE-YEAR LIBOR INDEX - 10 Yr. Interest Only Period - Single Family - Fannie Mae Uniform
Instrument
• InterestFirst 10 Year Interest Only 5/1,7/1 ARM Note
1197N-XX (02/07)(d/i)                          Page 1 of 5                                    Form 3535 6/06

REDACTED

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $2,215.31    until the first Change Date.
After the first Change Date, my monthly payment will be in an amount sufficient to pay accrued interest, at the rate determined as described in Section 4 of this Note until the First Principal and Interest Payment Due Date. On that date and thereafter, my monthly payment will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of changes in monthly payment.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

4.  ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A)  Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of OCTOBER, 2012
and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B)  The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C)  Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO & ONE-QUARTER
percentage points (    2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

(D)  Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than    11.375 % or less than
2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than    11.375 %.

(E)  Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F)  Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

(G)  Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 10th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   FIFTEEN        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be       5.000 % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

### (B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A)  Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)  When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
MICHAEL MILLER                          - Borrower

_____ (Seal)
                                        - Borrower

_____ (Seal)
                                        - Borrower

PAY TO THE ORDER OF

_____ (Seal)
                                        - Borrower

WITHOUT RECOURSE                        *[Sign Original Only]*
COUNTRYWIDE HOME LOANS, INC.

BY: _____
    MICHELE SJOLANDER
    EXECUTIVE VICE PRESIDENT

PAY TO THE ORDER OF
COUNTRYWIDE HOME LOANS, INC.
WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB

BY: _____
    LAURIE MEDER
    SENIOR VICE PRESIDENT

\* Interest:First 10 Year Interest Only 5/1,7/1 ARM Note
1197N-XX (02/07)

Page 5 of 5

Form 3535 5/05

# EXHIBIT  2

**This page is part of your document - DO NOT DISCARD**



**20072208092**    Pages: 020

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

09/25/07 AT 08:00AM

Fee: 124.00
Tax: 0.00
Other: 0.00
Total: 124.00

Title Company

REDACTED

**TITLE(S) :**



L E A D      S H E E T

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**

**Number of AIN's Shown**

 E464773    **THIS FORM IS NOT TO BE DUPLICATED**

LANDSAFE TITLE

Recording Requested By:
W. SCHNIEDERS



09/25/07

**20072208092**

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
CHERIE BRYAN

REDACTED ———— [Space Above This Line For Recording Data] ————————

REDACTED
[Escrow/Closing #]                                    [Doc ID #]

# DEED OF TRUST

MIN REDACTED

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20
and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)  "Security Instrument"** means this document, which is dated    SEPTEMBER 18, 2007    , together with all Riders to
this document.
**(B)  "Borrower"** is
MICHAEL MILLER, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY

Borrower's address is
9614 MOONBEAM AVE. #16, PANORAMA CITY, CA 91402
Borrower is the trustor under this Security Instrument.

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

M Deed of Trust-CA
1006A-CA (08/07)(d/i)                            Page 1 of 12                                    Form 3005  1/01

REDACTED

Doc ID #: REDACTED

**(C)** **"Lender"** is
Countrywide Bank, FSB.
Lender is a FED SVGS BANK
organized and existing under the laws of THE UNITED STATES
Lender's address is
1199 North Fairfax St. Ste.500, Alexandria, VA 22314
**(D)** **"Trustee"** is
RECONTRUST COMPANY, N.A.
225 WEST HILLCREST DRIVE, MSN: TO-02, THOUSAND OAKS, CA 91360
**(E)** **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a
nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is
organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint,
MI 48501-2026, tel. (888) 679-MERS.
**(F)** **"Note"** means the promissory note signed by Borrower and dated   SEPTEMBER 18, 2007   . The Note states that
Borrower owes Lender
FOUR HUNDRED SEVENTEEN THOUSAND and 00/100

Dollars (U.S. $ 417,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and
to pay the debt in full not later than   OCTOBER 01, 2037   .
**(G)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note,
and all sums due under this Security Instrument, plus interest.
**(I)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be
executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(J)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are
imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar
paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to
order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-
sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(M)** **"Escrow Items"** means those items that are described in Section 3.
**(N)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party
(other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property;
(ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(O)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(P)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any
amounts under Section 3 of this Security Instrument.
**(Q)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor
legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all
requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as
a "federally related mortgage loan" under RESPA.
**(R)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has
assumed Borrower's obligations under the Note and/or this Security Instrument.

DOC ID #: REDACTED

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

          COUNTY         of        LOS ANGELES    :
[Type of Recording Jurisdiction]         [Name of Recording Jurisdiction]

LOT 39 OF TRACT NO. 11395, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 204, PAGE(S) 34 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

SEE ATTACHED EXHIBIT A

Parcel ID Number: 2656-008-009         which currently has the address of
        9540 BURNET AVENUE, NORTH HILLS
        [Street/City]
California 91343-2309 ("Property Address"):
    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim



M Deed of Trust-CA
1006A-CA (06/07)         Page 3 of 12         Form 3005 1/01

# EXHIBIT "A"

## LEGAL DESCRIPTION

The land referred to herein is situated in the, County of Los Angeles, State of California and is described as follows:

Lot 39 of Tract No. 11395, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 204, Page(s) 34 of Maps, in the office of the County Recorder of said County.

Assessors Parcel No.: 2656-008-009

DOC ID #: REDACTED

which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

   2.   **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

   Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

   3.   **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10.  These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section.  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

   If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

   Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

M Deed of Trust-CA
1006A-CA (06/07)                         Page 4 of 12                         Form 3005  1/01

DOC ID #: REDACTED

**4.    Charges; Liens..** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.    Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim,

DOC ID #: REDACTED



then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.    **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.    **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.    **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and

M Deed of Trust-CA
1006A-CA (08/07)                    Page 6 of 12                    Form 3005  1/01

DOC ID #: REDACTED

retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)  **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b)  **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11.  **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

M Deed of Trust-CA
1005A-CA (08/07)

Form 3005  1/01

DOC ID #: REDACTED

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12.  Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14.  Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15.  Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice

DOC ID #: REDACTED

in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time

DOC ID #: REDACTED

period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security



M Deed of Trust-CA
1006A-CA (06/07)

Form 3005  1/01

DOC ID #: REDACTED

Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
MICHAEL MILLER                                        -Borrower

_____ (Seal)
                                                              -Borrower

_____ (Seal)
                                                              -Borrower

_____ (Seal)
                                                              -Borrower

M Deed of Trust-CA
1006A-CA (06/07)                    Page 11 of 12                    Form 3005  1/01

DOC ID #: REDACTED

State of California
County of _Los Angeles_                    } ss.

On _September 19, 2007_ before me, _Satenik Antonyan, a Notary Public_

personally appeared

_Michael Miller_

, ~~personally known to me~~
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

SATENIK ANTONYAN
COMM. # 1538061
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
COMM. EXP. DEC. 24, 2008

_____ (Seal)

M Deed of Trust-CA
1006A-CA (06/07)                    Page 12 of 12                    Form 3005  1/01

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Los Angeles_ } ss.

On _September 19, 2007_ before me, _Satenik Antonyan a Notary Public_
         Date                                    Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Michael Miller_
                                       Name(s) of Signer(s)

☐ personally known to me
☒ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
        Signature of Notary Public

*(Notary seal: SATENIK ANTONYAN · COMM. # 1538061 · NOTARY PUBLIC-CALIFORNIA · LOS ANGELES COUNTY · COMM. EXP. DEC. 24, 2008)*

———————————— OPTIONAL ————————————
Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.

**Description of Attached Document**

Title or Type of Document: _Deed of Trust_

Document Date: _____      Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer**

Signer's Name: _____

☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org      Prod. No. 5907      Reorder: Call Toll-Free 1-800-876-6827

LOAN #: REDACTED

## FIXED/ADJUSTABLE RATE RIDER

(LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this EIGHTEENTH          day of
SEPTEMBER, 2007  , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
Countrywide Bank, FSB.

("Lender") of the same date and covering the property described in the Security Instrument and located at:

9540 BURNET AVENUE

NORTH HILLS, CA 91343-2309
[Property Address]

THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE
TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT
BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A.   ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES
     The Note provides for an initial fixed interest rate of          6.375 %. The Note also
provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
     (A) Change Dates
     The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of
OCTOBER, 2012    , and the adjustable interest rate I will pay may change on that day every
12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate,
and each date on which my adjustable interest rate could change, is called a "Change Date."

● FIXED/ARM Rider
Interest First/Only LIBOR One-Year Index
1E460-US (10/05)(d)                    Page 1 of 5



REDACTED

LOAN #: REDACTED

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO & ONE-QUART percentage points (    2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than    11.375 % or less than    2.250. %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than    11.375 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

1. Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

● FIXED/ARM Rider
Interest First/Only LIBOR One-Year Index
1E460-US (10/05)                    Page 2 of 5

LOAN #: REDACTED

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B.1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

● FIXED/ARM Rider
Interest First/Only LIBOR One-Year Index
1E460-US (10/05)                    Page 3 of 5

LOAN #: REDACTED

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

• FIXED/ARM Rider
Interest First/Only LIBOR One-Year Index
1E460-US (10/05)                    Page 4 of 5

LOAN #: REDACTED

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____(Seal)
MICHAEL MILLER                                  -Borrower

_____(Seal)
                                                -Borrower

_____(Seal)
                                                -Borrower

_____(Seal)
                                                -Borrower

• FIXED/ARM Rider
Interest First/Only LIBOR One-Year Index
1E460-US (10/05)                    Page 5 of 5

# EXHIBIT 3



**This page is part of your document - DO NOT DISCARD**



## 20111444670



**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**10/25/11 AT 04:03PM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201110250270239

**00004841201**



003576197

**SEQ:**
**01**

Daily ERDS



**THIS FORM IS NOT TO BE DUPLICATED**

E13

E534321

Recording Requested By:
**Bank of America**
Prepared By: **Srbui Muradyan**
**450 E. Boundary St.**
**Chapin, SC 29036**
**888-603-9011**
When recorded mail to:
**CoreLogic**
**450 E. Boundary St.**
**Attn: Release Dept.**
**Chapin, SC 29036**

REDACTED

Property Address:
**9540 Burnet Ave**
**North Hills, CA 91343-2309**

REDACTED

REDACTED

This space for Recorder's use

MERS Phone #: 888-679-6377

# ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474** does hereby grant, sell, assign, transfer and convey unto **BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP** whose address is **13150 WORLD GATE DR, HERNDON, VA 20170** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Original Lender: | **COUNTRYWIDE BANK, FSB** |
| Original Borrower(s): | **MICHAEL MILLER, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY** |
| Original Trustee: | **RECONTRUST COMPANY, N.A.** |
| Date of Deed of Trust: | **9/18/2007** |
| Original Loan Amount: | **$417,000.00** |

Recorded in **Los Angeles County, CA** on: **9/25/2007**, book N/A, page N/A and instrument number **20072208092**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
<u>OCT 0 7 2011</u>

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

By:_____

**Bud Kamyabi Assistant Secretary ,**

State of California
County of **Ventura**

On __10/7/11__ before me, _Desiree Carson_, Notary Public, personally appeared
_Bud Kamyabi_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: _____    **(Seal)**
My Commission Expires: _____

DESIREE CARSON
Commission # 1873687
Notary Public - California
Ventura County
My Comm. Expires Dec 19, 2013

DocID#    REDACTED

# EXHIBIT 4

**This page is part of your document - DO NOT DISCARD**



## 20111452911



**Pages:**
**0005**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

### 10/27/11 AT 08:00AM

| | |
|---|---|
| FEES: | 27.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 27.00 |



**LEADSHEET**



201110270240007

00004863141



003585229

**SEQ:**
**14**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

t46

LANDSAFE TITLE

RECORDING REQUESTED BY:
WHEN RECORDED MAIL TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063



Attn: German Franco
TS No. 11-0125074
Title Order No. 11-0105258

_____
SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded ( which date of recordation appears on this notice).

This amount is $22,224.78, as of 10/25/2011 and will increase until your account becomes current.

   While your property is in foreclosure, you still must pay other obligations ( such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

   Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this Notice of Default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).



TS No: 11-0125074

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS
SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP
C/O Bank of America, N.A.
400 National way
SIMI VALLEY, CA  93065
FORECLOSURE DEPARTMENT (800) 669-6650

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember,

## YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN THAT: RECONTRUST COMPANY, N.A., is acting as an agent for the Beneficiary under a Deed of Trust dated 09/18/2007, executed by MICHAEL MILLER, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as beneficiary recorded 09/25/2007, as Instrument No. 20072208092 (or Book , Page ) of Official Records in the Office of the County Recorder of Los Angeles County, California.
Said obligation including ONE NOTE FOR THE ORIGINAL sum of $ 417,000.00.
That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of : FAILURE TO PAY THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 07/01/2011  AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND INTEREST, TOGETHER WITH ALL LATE CHARGES; PLUS ADVANCES MADE AND COSTS INCURRED BY THE BENEFICIARY INCLUDING FORECLOSURE FEES AND COSTS AND/OR ATTORNEYS FEES.

TS No. 11-0125074

That by reason thereof, the present beneficiary under such deed of trust has executed and
delivered to RECONTRUST COMPANY, N.A. such deed of trust and all documents
evidencing obligations secured  thereby, and has declared and does hereby declare all sums
secured thereby immediately due and payable  and has elected and does hereby elect to
cause the trust property to be sold to satisfy the obligations secured thereby.
If required by the provisions of  Section 2923.5 of the California Civil Code, the declaration
from the mortgagee, beneficiary or authorized agent is attached to the Notice of Default
duly recorded with the appropriate County Recorder's office.
Dated: October 25, 2011
RECONTRUST COMPANY, N.A., as agent for the Beneficiary
OCT 2 5 2011

Authorized Signer

MARTHA CASILLAS

ASSISTANT VICE PRESIDENT

*Form nodorig_2011.3.0_03/2011*



**Bank of America**

**Home Loans**

Notice Date:    October 19, 2011

Michael Miller
9540 Burnet Ave
North Hills, CA  91343

11-0125074

**Property Address:**
9540 Burnet Avenue
North Hills, CA  91343

## CALIFORNIA DECLARATION

I, __Donette Kilby__, Mortgage Servicing Specialist of Bank of America, N.A.,
declare under penalty of perjury, under the laws of the State of California, that the
following is true and correct:

Bank of America

☐ has contacted the borrower to assess the borrower's financial situation and explore
options for the borrower to avoid foreclosure,

☒ tried with due diligence to contact the borrower in accordance with California Civil
Code Section 2923.5, or

☐ verified that the borrower has surrendered the property.

☐ has evidence and reasonably believes that the borrower has contracted with an
organization, person, or entity whose primary business is advising people who have
decided to leave their homes on how to extend the foreclosure process and to avoid
their contractual obligations to beneficiaries.

☐ has confirmed that the borrower(s) filed for bankruptcy and the proceedings have not
been finalized to wit, there is no order on the court's docket closing or dismissing the
bankruptcy case.

☐ The provisions of California Civil Code §2923.5 do not apply because State Reason.

10/19/11    Jacksonville, Fl
Date and Place

Donette Kilby
Name of Signor

CA-DECLARATIONS 8638/9608 8/27/2008

# EXHIBIT 5



## This page is part of your document - DO NOT DISCARD





# 20120173595

**Pages:**
**0002**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

### 02/01/12 AT 08:00AM

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**LEADSHEET**

201202010190001

**00005313599**

003774121

**SEQ:**
**06**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E497026

t46

2

RECORDING REQUESTED BY:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063



02/01/2012

*20120173595*

WHEN RECORDED MAIL TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
TS No. 11-0125074
Title Order No. 11-0105258

APN No. 2656-008-009

## NOTICE OF TRUSTEE'S SALE

## YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 09/18/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

Notice is hereby given that RECONTRUST COMPANY, N.A., as duly appointed trustee pursuant to the Deed of Trust executed by MICHAEL MILLER, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY, dated 09/18/2007 and recorded 09/25/2007, as Instrument No. 20072208092, in Book , Page of Official Records in the office of the County Recorder of LOS ANGELES County, State of California, will sell on 02/24/2012 at 11:00 AM, By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766

at public auction, to the highest bidder for cash or check as described below, payable in full at time of sale, all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and as more fully described in the above referenced Deed of Trust. The street address and other common designation, if any, of the real property described above is purported to be: 9540 BURNET AVENUE, NORTH HILLS, CA 91343-2309. The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

The total amount of the unpaid balance with interest thereon of the obligation secured by the property to be sold plus reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $435,623.64. It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

In addition to cash, the Trustee will accept cashier's checks drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state.

Said sale will be made, in an "AS IS" condition, but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as provided, and the unpaid principal of the Note secured by said Deed of Trust with interest thereon as provided in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

If required by the provisions of Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Trustee's Sale duly recorded with the appropriate County Recorder's office.
RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
Phone/Sale Information: (800) 281-8219

By: _____    JAN 3 0 2012
Rosselin Rincon, Asst Vice President

RECONTRUST COMPANY, N.A. is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose.

6

# EXHIBIT 6

This page is part of your document - DO NOT DISCARD



## 20131143998





**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**08/05/13 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201308050190003

00008112436

005680407

**SEQ:**
**10**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

t46

LANDSAFE TITLE
RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

WHEN RECORDED MAIL TO:
RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
TS No. 11-0125074
Title Order No. 11-0105258

*20131143998*

APN No. 2656-008-009

## NOTICE OF TRUSTEE'S SALE

## NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED, IF REQUIRED BY THE PROVISIONS OF SECTION 2923.3 OF THE CALIFORNIA CIVIL CODE.
## NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
## TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
## LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY
## 注:本文件包含一个信息摘要
## 참고사항: 본 첨부 문서에 정보 요약서가 있습니다

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 09/18/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

Notice is hereby given that RECONTRUST COMPANY, N.A., as duly appointed trustee pursuant to the Deed of Trust executed by MICHAEL MILLER, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY, dated 09/18/2007 and recorded 09/25/2007, as Instrument No. 20072208092, in Book N/A, Page N/A of Official Records in the office of the County Recorder of LOS ANGELES County, State of California, will sell on 08/28/2013 at 11:00 AM, By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766 at public auction, to the highest bidder for cash or check as described below, payable in full at time of sale, all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and as more fully described in the above referenced Deed of Trust. The street address and other common designation, if any, of the real property described above is purported to be: 9540 BURNET AVENUE, NORTH HILLS, CA 91343-2309. The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

The total amount of the unpaid balance with interest thereon of the obligation secured by the property to be sold plus reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $482,740.91. It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

In addition to cash, the Trustee will accept cashier's checks drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state.

Said sale will be made, in an "AS IS" condition, but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as provided, and the unpaid principal of the Note secured by said Deed of Trust with interest thereon as provided in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

TS No. 11-0125074
APN No. 2656-008-009

## NOTICE TO POTENTIAL BIDDERS

If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on a property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the lender may hold more than one mortgage or deed of trust on the property.

## NOTICE TO PROPERTY OWNER

The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 1-800-281-8219 or visit this Internet Web site www.recontrustco.com, using the file number assigned to this case 11-0125074. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
Phone/Sale Information: (800) 281-8219        /        AUG 0 1 2013

By: _____
Rosselin Rincon, Asst Vice President
RECONTRUST COMPANY, N.A. is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose.

# EXHIBIT 7

DISMISSED, CLOSED

# U.S. Bankruptcy Court
## Central District Of California (San Fernando Valley)
### Bankruptcy Petition #: 1:12-bk-12762-VK

|  |  |
|---|---|
| | *Date filed:* 03/23/2012 |
| *Assigned to:* Victoria S. Kaufman | *Date terminated:* 12/20/2013 |
| Chapter 13 | *Debtor dismissed:* 07/17/2013 |
| Voluntary | *Plan confirmed:* 06/21/2012 |
| Asset | *341 meeting:* 05/02/2012 |

*Debtor disposition:* Dismissed for Other Reason

| | |
|---|---|
| **Debtor** | represented by **Kevin T Simon** |
| **Michael Miller** | Simon Resnik Hayes LLP |
| 9540 Burnet Avenue | 15233 Ventura Blvd Ste 250 |
| North Hills, CA 91343 | Sherman Oaks, CA 91403 |
| LOS ANGELES-CA | 818-783-6251 |
| SSN / ITIN: xxx-xx-8423 | Fax : 818-783-6253 |
| | Email: kevin@srhlawfirm.com |

**Trustee**
**Elizabeth (SV) F Rojas (TR)**
Valley Executive Center
15260 Ventura Blvd., Suite 710
Sherman Oaks, CA 91403
818-933-5700

**U.S. Trustee**
**United States Trustee (SV)**
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 91007
(213) 894-6811

| Filing Date | # | Docket Text |
|---|---|---|
| 03/23/2012 | 1<br>(13 pgs; 3 docs) | Chapter 13 Voluntary Petition . Fee Amount $281 Filed by Michael Miller Schedule A due 04/6/2012. Schedule B due 04/6/2012. Schedule C due 04/6/2012. Schedule D due 04/6/2012. Schedule E due 04/6/2012. Schedule F due 04/6/2012. Schedule G due 04/6/2012. Schedule H due 04/6/2012. Schedule I due 04/6/2012. Schedule J due 04/6/2012. Statement of Financial Affairs due 04/6/2012. Chapter 13 Plan due by 04/6/2012. Statement - Form |

| | | |
|---|---|---|
| | | 22C Due: 04/6/2012. Summary of schedules due 04/6/2012. Declaration concerning debtors schedules due 04/6/2012. Statistical Summary due 04/6/2012. Debtor Certification of Employment Income due by 04/6/2012. Incomplete Filings due by 04/6/2012. (Simon, Kevin) Section 316 Incomplete Filings due 5/6/2012. Modified on 3/26/2012 (Clodfelter, Ellen). (Entered: 03/23/2012) |
| 03/23/2012 | 2 (5 pgs) | Rights and responsibilities agreement between chapter 13 debtors and their attorneys Filed by Debtor Michael Miller. (Simon, Kevin) (Entered: 03/23/2012) |
| 03/23/2012 | | Receipt of Voluntary Petition (Chapter 13)(1:12-bk-12762) [misc,volp13] ( 281.00) Filing Fee. Receipt number 26112159. Fee amount 281.00. (U.S. Treasury) (Entered: 03/23/2012) |
| 03/23/2012 | 6 (2 pgs) | Meeting of Creditors with 341(a) meeting to be held on 05/02/2012 at 10:00 AM at RM 105, 21051 Warner Center Lane, Woodland Hills, CA 91367. Confirmation hearing to be held on 06/12/2012 at 09:30 AM at Crtrm 301, 21041 Burbank Blvd, Woodland Hills, CA 91367. Proof of Claim due by 07/31/2012. (Simon, Kevin) (Entered: 03/23/2012) |
| 03/23/2012 | 3 | Statement of Social Security Number(s) Form B21 Filed by Debtor Michael Miller. (Simon, Kevin) (Entered: 03/23/2012) |
| 03/23/2012 | 4 (1 pg) | Certificate of Credit Counseling Filed by Debtor Michael Miller. (Simon, Kevin) (Entered: 03/23/2012) |
| 03/23/2012 | 5 (1 pg) | Declaration Re: Electronic Filing Filed by Debtor Michael Miller. (Simon, Kevin) (Entered: 03/23/2012) |
| 03/28/2012 | 7 (4 pgs) | BNC Certificate of Notice (RE: related document(s) 6 Meeting (AutoAssign Chapter 13)) No. of Notices: 6. Notice Date 03/28/2012. (Admin.) (Entered: 03/28/2012) |
| 03/28/2012 | 8 (3 pgs) | BNC Certificate of Notice (RE: related document(s) 1 Voluntary Petition (Chapter 13) filed by Debtor Michael Miller) No. of Notices: 1. Notice Date 03/28/2012. (Admin.) (Entered: 03/28/2012) |

| | | |
|---|---|---|
| 03/28/2012 | 9<br>(3 pgs) | BNC Certificate of Notice (RE: related document(s) 1 Voluntary Petition (Chapter 13) filed by Debtor Michael Miller) No. of Notices: 1. Notice Date 03/28/2012. (Admin.) (Entered: 03/28/2012) |
| 04/06/2012 | 10<br>(40 pgs) | Summary of Schedules , Statistical Summary of Certain Liabilities, Schedule A , Schedule B , Schedule C , Schedule D , Schedule E , Schedule F , Schedule G , Schedule H , Schedule I , Schedule J , Declaration concerning debtor's schedules , Statement of Financial Affairs , Debtor's Certification of Employment Income , Chapter 13 Statement of Current Monthly and Disposable Income , Verification of creditor matrix , Amendment to List of Creditors. Fee Amount $30, Declaration RE Tax Returns (Preconfirmation) , Declaration RE: Payment of Domestic Support Obligations Filed by Debtor Michael Miller (RE: related document(s)1 Voluntary Petition (Chapter 13)). (Simon, Kevin) (Entered: 04/06/2012) |
| 04/06/2012 | | Receipt of Amended Creditor Matrix (Fee)(1:12-bk-12762-VK) [misc,amdcm] ( 30.00) Filing Fee. Receipt number 26405899. Fee amount 30.00. (U.S. Treasury) (Entered: 04/06/2012) |
| 04/06/2012 | 11<br>(11 pgs) | Chapter 13 Plan Filed by Debtor Michael Miller (RE: related document(s)1 Chapter 13 Voluntary Petition . Fee Amount $281 Filed by Michael Miller Schedule A due 04/6/2012. Schedule B due 04/6/2012. Schedule C due 04/6/2012. Schedule D due 04/6/2012. Schedule E due 04/6/2012. Schedule F due 04/6/2012. Schedule G due 04/6/2012. Schedule H due 04/6/2012. Schedule I due 04/6/2012. Schedule J due 04/6/2012. Statement of Financial Affairs due 04/6/2012. Chapter 13 Plan due by 04/6/2012. Statement - Form 22C Due: 04/6/2012. Summary of schedules due 04/6/2012. Declaration concerning debtors schedules due 04/6/2012. Statistical Summary due 04/6/2012. Debtor Certification of Employment Income due by 04/6/2012. Incomplete Filings due by 04/6/2012..). (Simon, Kevin) (Entered: 04/06/2012) |
| 04/06/2012 | 12<br>(16 pgs) | Debtor's notice of section 341(a) meeting and hearing on confirmation of chapter 13 plan with copy of chapter 13 plan *with proof of service* Filed |

| | | by Debtor Michael Miller. (Simon, Kevin) (Entered: 04/06/2012) |
|---|---|---|
| 04/18/2012 | 13 (1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Ribeiro, Irina. (Ribeiro, Irina) (Entered: 04/18/2012) |
| 04/24/2012 | 14 (3 pgs) | Objection to Confirmation of Plan *with Proof of Service* Filed by Creditor JPMorgan Chase Bank, National Association (RE: related document(s)11 Chapter 13 Plan Filed by Debtor Michael Miller). (Guiab, Olen-Keith) (Entered: 04/24/2012) |
| 05/03/2012 | 15 (1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Singh, Ramesh. (Singh, Ramesh) (Entered: 05/03/2012) |
| 05/09/2012 | 16 (4 pgs) | Objection to Confirmation of Chapter 13 Plan . (Rojas (TR), Elizabeth (SV)) (Entered: 05/09/2012) |
| 05/10/2012 | 17 (5 pgs) | Application for Compensation *Notice of Application for Fees; with proof of service* for Kevin T Simon, Debtor's Attorney, Period: to, Fee: $4000.00, Expenses: $0.00. Filed by Attorney Kevin T Simon (Simon, Kevin) (Entered: 05/10/2012) |
| 05/16/2012 | 18 (12 pgs) | Objection to Confirmation of Plan Filed by Creditor Bank of America, N.A. (RE: related document(s)11 Chapter 13 Plan Filed by Debtor Michael Miller). (Garibyan, Joseph) (Entered: 05/16/2012) |
| 05/29/2012 | 19 (12 pgs) | Declaration re: non opposition *with proof of service* Filed by Debtor Michael Miller (RE: related document(s)17 Application for Compensation *Notice of Application for Fees; with proof of service* for Kevin T Simon, Debtor's Attorney, Period: to, Fee: $4000.00, Expenses: $0.00.). (Simon, Kevin) (Entered: 05/29/2012) |
| 05/30/2012 | 20 (4 pgs) | Declaration re: *Taxes; with proof of service* Filed by Debtor Michael Miller. (Simon, Kevin) (Entered: 05/30/2012) |
| 05/30/2012 | 21 (5 pgs) | Declaration re: *Income; with proof of service* Filed by Debtor Michael Miller. (Simon, Kevin) (Entered: 05/30/2012) |
| 05/30/2012 | | |

|  |  |  |
|---|---|---|
|  | 22<br>(4 pgs) | Declaration re: *Rent; with proof of service* Filed by Debtor Michael Miller. (Simon, Kevin) (Entered: 05/30/2012) |
| 05/30/2012 | 23<br>(7 pgs) | Amended Schedule J *with proof of service* Filed by Debtor Michael Miller. (Simon, Kevin) (Entered: 05/30/2012) |
| 05/30/2012 | 24<br>(15 pgs) | Amended Chapter 13 Plan *First Amended Plan; with proof of service* Filed by Debtor Michael Miller (RE: related document(s)11 Chapter 13 Plan Filed by Debtor Michael Miller). (Simon, Kevin) (Entered: 05/30/2012) |
| 05/30/2012 | 25<br>(1 pg) | Declaration Re: Electronic Filing Filed by Debtor Michael Miller. (Simon, Kevin) (Entered: 05/30/2012) |
| 06/05/2012 | 26<br>(1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Richey, Cassandra. (Richey, Cassandra) (Entered: 06/05/2012) |
| 06/06/2012 | 27<br>(2 pgs) | Withdrawal re: *Objection to Confirmation of Chapter 13 Plan* Filed by Creditor JPMorgan Chase Bank, National Association (RE: related document (s)14 Objection to Confirmation of the Plan). (Guiab, Olen-Keith) (Entered: 06/06/2012) |
| 06/11/2012 | 28<br>(6 pgs) | Stipulation By Bank of America, N.A. and *Michael Miller - Stipulation to Strike Addendum* Filed by Creditor Bank of America, N.A. (Garibyan, Joseph) (Entered: 06/11/2012) |
| 06/13/2012 | 29<br>(4 pgs) | Declaration Setting Forth Postpetition, Preconfirmation Payments On: 1. Deeds of Trust (or Mortgages), 2. Leases of Personal Property; 3. Purchase Money Security Liens on Personal Property Filed by Debtor Michael Miller. (Simon, Kevin) (Entered: 06/13/2012) |
| 06/13/2012 | 30<br>(5 pgs) | Declaration Setting Forth Postpetition, Preconfirmation Payments On: 1. Deeds of Trust (or Mortgages), 2. Leases of Personal Property; 3. Purchase Money Security Liens on Personal Property Filed by Debtor Michael Miller. (Simon, Kevin) (Entered: 06/13/2012) |
| 06/14/2012 |  |  |

| | | |
|---|---|---|
| | [31](#)<br>(4 pgs) | Order Granting Application For Compensation (Related Doc # [17](#)) for Kevin T Simon, fees awarded: $4000.00, expenses awarded: $ Signed on 6/14/2012. (Briggs, Victoria) (Entered: 06/14/2012) |
| 06/14/2012 | [32](#)<br>(6 pgs) | Order on Stipulation to Strike Addendum with Notice of Entered Order and Service List (Related Doc # [28](#) ) Signed on 6/14/2012 (Bever, Sabine) I, Deputy Clerk who is making this entry, certify that service on all parties under Section II is completed. (Entered: 06/14/2012) |
| 06/16/2012 | [33](#)<br>(8 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)[32](#) Order (Generic)) No. of Notices: 3. Notice Date 06/16/2012. (Admin.) (Entered: 06/16/2012) |
| 06/21/2012 | [34](#)<br>(2 pgs) | Order Confirming Chapter 13 Plan (Related Doc # [24](#) ) Signed on 6/21/2012 (Garcia, Patty) (Entered: 06/21/2012) |
| 06/23/2012 | [35](#)<br>(4 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)[34](#) Order Confirming Chapter 13 Plan) No. of Notices: 3. Notice Date 06/23/2012. (Admin.) (Entered: 06/23/2012) |
| 07/19/2012 | [36](#)<br>(2 pgs) | Chapter 13 Trustee Periodic Accounting Report . (Rojas (TR), Elizabeth (SV)) (Entered: 07/19/2012) |
| 09/05/2012 | [37](#)<br>(3 pgs) | Notice of intent to pay claims . (Rojas (TR), Elizabeth (SV)) (Entered: 09/05/2012) |
| 09/26/2012 | [38](#)<br>(2 pgs) | Motion to Dismiss Case for Failure to Make Plan Payments Filed by (Rojas (TR), Elizabeth (SV)) (Entered: 09/26/2012) |
| 10/04/2012 | [39](#)<br>(5 pgs) | Opposition to (related document(s): [38](#) Motion to Dismiss Case for Failure to Make Plan Payments ) *with proof of service* Filed by Debtor Michael Miller (Simon, Kevin) (Entered: 10/04/2012) |
| 10/04/2012 | [40](#)<br>(2 pgs) | Notice *with proof of service; Hearing Date: November 13, 2012 at 1:30 PM in CTRM: 301* Filed by Debtor Michael Miller (RE: related document(s) [39](#) Opposition to). (Simon, Kevin) (Entered: 10/04/2012) |
| 10/04/2012 | 41 | |

| | | |
|---|---|---|
| | | Hearing Set (RE: related document(s)38 Motion to Dismiss Case for Failure to Make Plan Payments) The Hearing date is set for 11/13/2012 at 01:30 PM at Crtrm 301, 21041 Burbank Blvd, Woodland Hills, CA 91367. The case judge is Victoria S. Kaufman (Bever, Sabine) (Entered: 10/05/2012) |
| 10/08/2012 | 42 (6 pgs) | Application for Compensation *Notice of Application for Supplemental Fees; with proof of service* for Kevin T Simon, Debtor's Attorney, Period: to, Fee: $792.43, Expenses: $5.43. Filed by Attorney Kevin T Simon (Simon, Kevin) (Entered: 10/08/2012) |
| 10/08/2012 | 43 (7 pgs) | Amending Schedules (F) *with proof of service* Filed by Debtor Michael Miller. (Simon, Kevin) (Entered: 10/08/2012) |
| 10/08/2012 | | Receipt of Amending Schedules D E or F(1:12-bk-12762-VK) [misc,amdsch] ( 30.00) Filing Fee. Receipt number 29594907. Fee amount 30.00. (U.S. Treasury) (Entered: 10/08/2012) |
| 10/08/2012 | 44 (1 pg) | Declaration Re: Electronic Filing Filed by Debtor Michael Miller. (Simon, Kevin) (Entered: 10/08/2012) |
| 10/25/2012 | 45 (13 pgs) | Declaration re: non opposition *with proof of service* Filed by Debtor Michael Miller (RE: related document(s)42 Application for Compensation *Notice of Application for Supplemental Fees; with proof of service* for Kevin T Simon, Debtor's Attorney, Period: to, Fee: $792.43, Expenses: $5.43.). (Simon, Kevin) (Entered: 10/25/2012) |
| 10/30/2012 | 46 (4 pgs) | Order Granting Application For Compensation with notice of entered order and service list (Related Doc # 42) for Kevin T Simon, fees awarded: $792.43, expenses awarded: $0.00 Signed on 10/30/2012. (Bever, Sabine) (Entered: 10/30/2012) |
| 11/16/2012 | 47 (59 pgs; 4 docs) | Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 9414 Moonbeam Avenue #16 Panorama City, CA 91402 . Fee Amount $176, Filed by Creditor JPMorgan Chase Bank, National Association (Attachments: # 1 Supplemental# 2 Legal Description# 3 Exhibit) (O, Christina) (Entered: 11/16/2012) |

| | | |
|---|---|---|
| 11/16/2012 | | Receipt of Motion for Relief from Stay - Real Property(1:12-bk-12762-VK) [motion,nmrp] ( 176.00) Filing Fee. Receipt number 30232413. Fee amount 176.00. (U.S. Treasury) (Entered: 11/16/2012) |
| 11/16/2012 | 48 | Hearing Set (RE: related document(s)47 Motion for Relief from Stay - Real Property filed by Creditor JPMorgan Chase Bank, National Association) The Hearing date is set for 12/12/2012 at 09:30 AM at Crtrm 301, 21041 Burbank Blvd, Woodland Hills, CA 91367. The case judge is Victoria S. Kaufman (Bever, Sabine) (Entered: 11/16/2012) |
| 12/06/2012 | 49 (5 pgs) | Response to motion for order to terminate, annul, modify or condition the automatic stay and declaration(s) in support (related document(s): 47 Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 9414 Moonbeam Avenue #16 Panorama City, CA 91402 . Fee Amount $176, filed by Creditor JPMorgan Chase Bank, National Association) *with proof of service* Filed by Debtor Michael Miller (Simon, Kevin) (Entered: 12/06/2012) |
| 12/20/2012 | 50 (6 pgs) | Application for Compensation *Notice of Application for Supplemental Fees; with proof of service* for Kevin T Simon, Debtor's Attorney, Period: to, Fee: $752.43, Expenses: $5.43. Filed by Attorney Kevin T Simon (Simon, Kevin) (Entered: 12/20/2012) |
| 01/07/2013 | 51 (3 pgs; 2 docs) | Notice of Change of Address *and Change of Firm Name*. (Simon, Kevin) (Entered: 01/07/2013) |
| 01/08/2013 | 52 (8 pgs) | Stipulation By JPMorgan Chase Bank, National Association and *Michael Miller* Filed by Creditor JPMorgan Chase Bank, National Association (O, Christina) (Entered: 01/08/2013) |
| 01/08/2013 | 53 (9 pgs) | Notice of lodgment Filed by Creditor JPMorgan Chase Bank, National Association (RE: related document(s)47 Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 9414 Moonbeam Avenue #16 Panorama City, CA 91402 . Fee Amount $176,). (O, Christina) (Entered: 01/08/2013) |

| | | |
|---|---|---|
| 01/09/2013 | 54<br>(7 pgs) | Order Granting Motion for relief from the automatic stay REAL PROPERTY with Notice of Entered Order and Service List (BNC-PDF) (Related Doc # 47 ) Signed on 1/9/2013 (Bever, Sabine) (Entered: 01/09/2013) |
| 01/11/2013 | 55<br>(9 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)54 Motion for relief from the automatic stay REAL PROPERTY (BNC-PDF)) No. of Notices: 1. Notice Date 01/11/2013. (Admin.) (Entered: 01/11/2013) |
| 01/30/2013 | 56<br>(2 pgs) | Voluntary Dismissal of Motion *OF TRUSTEE MOTION TO DISMISS CASE* Filed by Trustee Elizabeth (SV) F Rojas (TR) (RE: related document(s)38 Motion to Dismiss Case for Failure to Make Plan Payments ). (Rojas (TR), Elizabeth (SV)) (Entered: 01/30/2013) |
| 03/05/2013 | 57<br>(2 pgs) | Chapter 13 Trustee Periodic Accounting Report . (Rojas (TR), Elizabeth (SV)) (Entered: 03/05/2013) |
| 03/25/2013 | 58<br>(71 pgs; 4 docs) | Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 9540 Burnet Avenue, North Hills, CA, 91343 . Fee Amount $176, Filed by Creditor Bank of America, N.A. (Attachments: # 1 Supplemental Declaration# 2 Legal Description# 3 Exhibit) (O, Christina) (Entered: 03/25/2013) |
| 03/25/2013 | | Receipt of Motion for Relief from Stay - Real Property(1:12-bk-12762-VK) [motion,nmrp] ( 176.00) Filing Fee. Receipt number 32207475. Fee amount 176.00. (U.S. Treasury) (Entered: 03/25/2013) |
| 03/25/2013 | 59 | Hearing Set (RE: related document(s)58 Motion for Relief from Stay - Real Property filed by Creditor Bank of America, N.A.) The Hearing date is set for 4/17/2013 at 09:30 AM at Crtrm 301, 21041 Burbank Blvd, Woodland Hills, CA 91367. The case judge is Victoria S. Kaufman (Bever, Sabine) (Entered: 03/26/2013) |
| 03/27/2013 | 60<br>(12 pgs) | Declaration re: non opposition *with proof of service* Filed by Debtor Michael Miller (RE: related document(s)50 Application for Compensation *Notice* |

| | | |
|---|---|---|
| | | *of Application for Supplemental Fees; with proof of service* for Kevin T Simon, Debtor's Attorney, Period: to, Fee: $752.43, Expenses: $5.43.). (Simon, Kevin) (Entered: 03/27/2013) |
| 04/08/2013 | 61 (3 pgs) | Order Granting Application For Compensation with Notice of Entered Order and Service List (BNC-PDF) (Related Doc # 50) for Kevin T Simon, fees awarded: $752.43, expenses awarded: $0.00 Signed on 4/8/2013. (Bever, Sabine) (Entered: 04/08/2013) |
| 04/10/2013 | 62 (5 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)61 Order on Application for Compensation (BNC-PDF)) No. of Notices: 1. Notice Date 04/10/2013. (Admin.) (Entered: 04/10/2013) |
| 04/11/2013 | 63 (8 pgs) | Response to motion for order to terminate, annul, modify or condition the automatic stay and declaration(s) in support (related document(s): 58 Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 9540 Burnet Avenue, North Hills, CA, 91343 . Fee Amount $176, filed by Creditor Bank of America, N.A.) *with proof of service* Filed by Debtor Michael Miller (Simon, Kevin) (Entered: 04/11/2013) |
| 04/18/2013 | | Hearing (Bk Motion) Continued (RE: related document(s) 58 MOTION FOR RELIEF FROM STAY - REAL PROPERTY filed by Bank of America, N.A.) Hearing to be held on 05/22/2013 at 09:30 AM 21041 Burbank Blvd Woodland Hills, CA 91367 for 58 , (Garcia, Patty) (Entered: 04/18/2013) |
| 04/24/2013 | 64 (3 pgs) | Notice of Hearing *Continued* Filed by Creditor Bank of America, N.A. (RE: related document(s)58 Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 9540 Burnet Avenue, North Hills, CA, 91343 . Fee Amount $176, Filed by Creditor Bank of America, N.A. (Attachments: # 1 Supplemental Declaration# 2 Legal Description# 3 Exhibit)). (O, Christina) (Entered: 04/24/2013) |
| 05/15/2013 | 65 (2 pgs) | Motion to Dismiss Case for Failure to Make Plan Payments Filed by (Rojas (TR), Elizabeth (SV)) (Entered: 05/15/2013) |

| | | |
|---|---|---|
| 05/29/2013 | 66 (5 pgs) | Opposition to (related document(s): 65 Motion to Dismiss Case for Failure to Make Plan Payments ) *with proof of service* Filed by Debtor Michael Miller (Simon, Kevin) (Entered: 05/29/2013) |
| 05/29/2013 | 67 (3 pgs) | Notice of Hearing *with proof of service* Filed by Debtor Michael Miller (RE: related document(s)65 Motion to Dismiss Case for Failure to Make Plan Payments Filed by (Rojas (TR), Elizabeth (SV))). (Simon, Kevin) (Entered: 05/29/2013) |
| 05/29/2013 | 68 | Hearing Set (RE: related document(s)65 Motion to Dismiss Case for Failure to Make Plan Payments) The Hearing date is set for 7/16/2013 at 11:30 AM at Crtrm 301, 21041 Burbank Blvd, Woodland Hills, CA 91367. The case judge is Victoria S. Kaufman (Bever, Sabine) (Entered: 05/29/2013) |
| 06/03/2013 | 69 (5 pgs) | Order Granting Motion for relief from the automatic stay REAL PROPERTY with Notice of Entered Order and Service List (BNC-PDF) (Related Doc # 58 ) Signed on 6/3/2013 (Bever, Sabine) (Entered: 06/03/2013) |
| 06/05/2013 | 70 (7 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)69 Motion for relief from the automatic stay REAL PROPERTY (BNC-PDF)) No. of Notices: 1. Notice Date 06/05/2013. (Admin.) (Entered: 06/05/2013) |
| 06/07/2013 | 71 (1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Rankin, Casper. (Rankin, Casper) (Entered: 06/07/2013) |
| 07/17/2013 | 72 (1 pg) | ORDER and Notice of dismissal arising from Motion to dismiss chapter 13 (11 U.S.C. Section 1307) - **Debtor** Dismissed.(BNC) (RE: related document(s)65 Motion to Dismiss Case for Failure to Make Plan Payments) (Bever, Sabine) (Entered: 07/17/2013) |
| 07/19/2013 | 73 (4 pgs) | BNC Certificate of Notice (RE: related document(s) 72 ORDER and Notice of Dismissal arising from Motion to dism Ch 13 (11 U.S.C. Section 1307) (BNC)) No. of Notices: 18. Notice Date 07/19/2013. (Admin.) (Entered: 07/19/2013) |
| 07/25/2013 | | |

|  | 74<br>(3 pgs) | Notice of Intent to File Trustees Final Report and Account - Chapter 13 Dismissed/Converted . (Rojas (TR), Elizabeth (SV)) (Entered: 07/25/2013) |
| 09/05/2013 | 75<br>(1 pg) | Declaration re: non-receipt of obj to trustee's final report (Dismissed/Converted Chapter 13 Cases) Filed by. (Rojas (TR), Elizabeth (SV)) (Entered: 09/05/2013) |
| 09/05/2013 | 76<br>(1 pg) | Proof of service Filed by. (Rojas (TR), Elizabeth (SV)) (Entered: 09/05/2013) |
| 09/05/2013 | 77<br>(3 pgs) | Chapter 13 Trustee's Final Report and Account . (Rojas (TR), Elizabeth (SV)) (Entered: 09/05/2013) |
| 12/20/2013 | 78 | Bankruptcy Case Closed - DISMISSED. An Order dismissing this case was entered and notice was provided to parties in interest. Since it appears that no further matters are required and that this case remain open, or that the jurisdiction of this Court continue, it is ordered that the Trustee is discharged, bond is exonerated, and the case is closed. (RE: related document(s)6 Meeting (AutoAssign Chapter 13), 47 Motion for Relief from Stay - Real Property filed by Creditor JPMorgan Chase Bank, National Association, 58 Motion for Relief from Stay - Real Property filed by Creditor Bank of America, N.A.) (Toomer, Rosalind) (Entered: 12/20/2013) |

| **PACER Service Center** | | |
| **Transaction Receipt** | | |
| 07/13/2015 11:49:53 | | |
| **PACER Login:** | gw0015:2558381:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:12-bk-12762-VK Fil or Ent: filed To: 7/13/2015 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

Case 1:15-bk-12195-MT    Doc 16    Filed 07/17/15    Entered 07/17/15 14:47:48    Desc
                    Main Document       Page 67 of 86

# EXHIBIT 8

Repeat-cacb, RepeatPACER, DISMISSED

# U.S. Bankruptcy Court
## Central District Of California (San Fernando Valley)
## Bankruptcy Petition #: 1:13-bk-15594-MT

|  |  |
|---|---|
| | *Date filed:* 08/26/2013 |
| *Assigned to:* Maureen Tighe | *Debtor dismissed:* 04/28/2015 |
| Chapter 13 | *341 meeting:* 10/16/2013 |
| Voluntary | |
| Asset | |

*Debtor disposition:* Dismissed for Other Reason

| | |
|---|---|
| **Debtor** | represented by **Kevin T Simon** |
| **Michael Miller** | Simon Resnik Hayes LLP |
| 9540 Burnet Avenue | 15233 Ventura Blvd Ste 250 |
| North Hills, CA 91343 | Sherman Oaks, CA 91403 |
| LOS ANGELES-CA | 818-783-6251 |
| SSN / ITIN: xxx-xx-8423 | Fax : 818-783-6253 |
| | Email: kevin@srhlawfirm.com |

**Trustee**
**Elizabeth (SV) F Rojas (TR)**
Valley Executive Center
15260 Ventura Blvd., Suite 710
Sherman Oaks, CA 91403
818-933-5700

**U.S. Trustee**
**United States Trustee (SV)**
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 91007
(213) 894-6811

| Filing Date | # | Docket Text |
|---|---|---|
| 08/26/2013 | 1<br>(15 pgs; 3 docs) | Chapter 13 Voluntary Petition . Fee Amount $281 Filed by Michael Miller Schedule A due 09/9/2013. Schedule B due 09/9/2013. Schedule C due 09/9/2013. Schedule D due 09/9/2013. Schedule E due 09/9/2013. Schedule F due 09/9/2013. Schedule G due 09/9/2013. Schedule H due 09/9/2013. Schedule I due 09/9/2013. Schedule J due 09/9/2013. Statement of Financial Affairs due 09/9/2013. Chapter 13 Plan due by 09/9/2013. Statement - Form |

|  |  |  |
|---|---|---|
|  |  | 22C Due: 09/9/2013. Summary of schedules due 09/9/2013. Declaration concerning debtors schedules due 09/9/2013. Statistical Summary due 09/9/2013. Debtor Certification of Employment Income due by 09/9/2013. Incomplete Filings due by 09/9/2013. (Simon, Kevin) WARNING: Section 316 Incomplete Filings due 10/10/2013. Modified on 8/27/2013 (Groves, Monica). (Entered: 08/26/2013) |
| 08/26/2013 | 2<br>(5 pgs) | Rights and responsibilities agreement between chapter 13 debtors and their attorneys Filed by Debtor Michael Miller. (Simon, Kevin) (Entered: 08/26/2013) |
| 08/26/2013 |  | Receipt of Voluntary Petition (Chapter 13)(1:13-bk-15594) [misc,volp13] ( 281.00) Filing Fee. Receipt number 34401827. Fee amount 281.00. (re: Doc# 1) (U.S. Treasury) (Entered: 08/26/2013) |
| 08/26/2013 | 6<br>(2 pgs) | Meeting of Creditors with 341(a) meeting to be held on 10/16/2013 at 09:00 AM at RM 105, 21051 Warner Center Lane, Woodland Hills, CA 91367. Confirmation hearing to be held on 11/19/2013 at 09:30 AM at Crtrm 302, 21041 Burbank Blvd, Woodland Hills, CA 91367. Proof of Claim due by 01/14/2014. (Simon, Kevin) (Entered: 08/26/2013) |
| 08/26/2013 | 3<br>(1 pg) | Certificate of Credit Counseling Filed by Debtor Michael Miller. (Simon, Kevin) (Entered: 08/26/2013) |
| 08/26/2013 | 4 | Statement of Social Security Number(s) Form B21 Filed by Debtor Michael Miller. (Simon, Kevin) (Entered: 08/26/2013) |
| 08/26/2013 | 5<br>(1 pg) | Declaration Re: Electronic Filing Filed by Debtor Michael Miller. (Simon, Kevin) (Entered: 08/26/2013) |
| 08/27/2013 |  | Notice of Debtor's Prior Filings for debtor Michael Miller Case Number 12-12762, Chapter 13 filed in California Central Bankruptcy on 03/23/2012 , Dismissed for Other Reason on 07/17/2013.(Admin) (Entered: 08/27/2013) |
| 08/28/2013 | 7<br>(14 pgs) | Notice of Motion and Motion in Individual Case for Order Imposing a Stay or Continuing the Automatic Stay as the Court Deems Appropriate 9540 Burnet |

| | | |
|---|---|---|
| | | Avenue North Hills, CA 91343 *with proof of service*. Fee Amount $176, Filed by Debtor Michael Miller (Simon, Kevin) (Entered: 08/28/2013) |
| 08/28/2013 | | Receipt of Motion for Relief - Imposing a Stay or Continuing the Automatic Stay(1:13-bk-15594-MT) [motion,nmis] ( 176.00) Filing Fee. Receipt number 34430677. Fee amount 176.00. (re: Doc# 7) (U.S. Treasury) (Entered: 08/28/2013) |
| 08/29/2013 | 8 | Hearing Set (RE: related document(s)7 Motion for Relief - Imposing a Stay or Continuing the Automatic Stay filed by Debtor Michael Miller) The Hearing date is set for 9/11/2013 at 09:30 AM at Crtrm 302, 21041 Burbank Blvd, Woodland Hills, CA 91367. The case judge is Maureen Tighe (Williams, Jewell) (Entered: 08/29/2013) |
| 08/29/2013 | 9 (4 pgs) | BNC Certificate of Notice (RE: related document(s) 6 Meeting (AutoAssign Chapter 13)) No. of Notices: 14. Notice Date 08/29/2013. (Admin.) (Entered: 08/29/2013) |
| 08/29/2013 | 10 (3 pgs) | BNC Certificate of Notice (RE: related document(s) 1 Voluntary Petition (Chapter 13) filed by Debtor Michael Miller) No. of Notices: 1. Notice Date 08/29/2013. (Admin.) (Entered: 08/29/2013) |
| 08/29/2013 | 11 (3 pgs) | BNC Certificate of Notice (RE: related document(s) 1 Voluntary Petition (Chapter 13) filed by Debtor Michael Miller) No. of Notices: 1. Notice Date 08/29/2013. (Admin.) (Entered: 08/29/2013) |
| 09/06/2013 | 12 (40 pgs) | Summary of Schedules , Statistical Summary of Certain Liabilities, Schedule A , Schedule B , Schedule C , Schedule D , Schedule E , Schedule F , Schedule G , Schedule H , Schedule I , Schedule J , Declaration concerning debtor's schedules , Statement of Financial Affairs , Debtor's Certification of Employment Income , Chapter 13 Statement of Current Monthly and Disposable Income , Verification of List of Creditors (Mailing List) , Amendment to List of Creditors. Fee Amount $30, Declaration RE Filing of Tax Returns and Payment of Domestic Support Obligations (Preconfirmation) Filed by Debtor Michael Miller (RE: related document(s)1 Voluntary Petition (Chapter 13)). (Simon, Kevin) (Entered: 09/06/2013) |

| | | |
|---|---|---|
| 09/06/2013 | | Receipt of Amended List of Creditors (Fee)(1:13-bk-15594-MT) [misc,amdcm] ( 30.00) Filing Fee. Receipt number 34535945. Fee amount 30.00. (re: Doc# 12) (U.S. Treasury) (Entered: 09/06/2013) |
| 09/06/2013 | 13 (12 pgs) | Chapter 13 Plan Filed by Debtor Michael Miller (RE: related document(s)1 Chapter 13 Voluntary Petition . Fee Amount $281 Filed by Michael Miller Schedule A due 9/9/2013. Schedule B due 09/9/2013. Schedule C due 09/9/2013. Schedule D due 09/9/2013. Schedule E due 09/9/2013. Schedule F due 09/9/2013. Schedule G due 09/9/2013. Schedule H due 09/9/2013. Schedule I due 09/9/2013. Schedule J due 09/9/2013. Statement of Financial Affairs due 09/9/2013. Chapter 13 Plan due by 09/9/2013. Statement - Form 22C Due: 09/9/2013. Summary of schedules due 09/9/2013. Declaration concerning debtors schedules due 09/9/2013. Statistical Summary due 09/9/2013. Debtor Certification of Employment Income due by 09/9/2013. Incomplete Filings due by 09/9/2013. (Simon, Kevin) WARNING: Section 316 Incomplete Filings due 10/10/2013. Modified on 8/27/2013.). (Simon, Kevin) (Entered: 09/06/2013) |
| 09/06/2013 | 14 (18 pgs) | Debtor's notice of section 341(a) meeting and hearing on confirmation of chapter 13 plan with copy of chapter 13 plan *with proof of service* Filed by Debtor Michael Miller. (Simon, Kevin) (Entered: 09/06/2013) |
| 09/06/2013 | 15 (1 pg) | Declaration Re: Electronic Filing Filed by Debtor Michael Miller. (Simon, Kevin) (Entered: 09/06/2013) |
| 09/09/2013 | | Hearing (Bk Motion) Continued (RE: related document(s) 7 MOTION FOR RELIEF - IMPOSING A STAY OR CONTINUING THE AUTOMATIC STAY filed by Michael Miller) Hearing to be held on 09/12/2013 at 01:00 PM 21041 Burbank Blvd Woodland Hills, CA 91367 for 7 , (Williams, Jewell) (Entered: 09/09/2013) |
| 09/13/2013 | 16 | Hearing Held on 9/12/13 GRANTED (RE: related document(s)7 Motion for Relief - Imposing a Stay or Continuing the Automatic Stay filed by Debtor Michael Miller) (Williams, Jewell) (Entered: 09/13/2013) |

| | | |
|---|---|---|
| 09/24/2013 | 17<br>(10 pgs) | Order Granting Motion for Order Imposing a Stay or Continuing the Automatic Stay (BNC-PDF) (Related Doc # 7 ). Signed on 9/24/2013 (Fisher, Liliana) (Entered: 09/24/2013) |
| 09/26/2013 | 18<br>(11 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)17 Motion for Order Imposing a Stay or Continuing the Automatic Stay (BNC-PDF)) No. of Notices: 1. Notice Date 09/26/2013. (Admin.) (Entered: 09/26/2013) |
| 10/15/2013 | 19<br>(4 pgs) | Declaration Setting Forth Postpetition, Preconfirmation Payments On: 1. Deeds of Trust (or Mortgages), 2. Leases of Personal Property; 3. Purchase Money Security Liens on Personal Property Filed by Debtor Michael Miller. (Simon, Kevin) (Entered: 10/15/2013) |
| 10/15/2013 | 20<br>(4 pgs) | Declaration Setting Forth Postpetition, Preconfirmation Payments On: 1. Deeds of Trust (or Mortgages), 2. Leases of Personal Property; 3. Purchase Money Security Liens on Personal Property Filed by Debtor Michael Miller. (Simon, Kevin) (Entered: 10/15/2013) |
| 10/16/2013 | 21<br>(4 pgs) | Application for Compensation *with proof of service* for Kevin T Simon, Debtor's Attorney, Period: to, Fee: $4000.00, Expenses: $0. Filed by Attorney Kevin T Simon (Simon, Kevin) (Entered: 10/16/2013) |
| 10/16/2013 | 22<br>(3 pgs) | Notice of motion/application *with proof of service* Filed by Debtor Michael Miller (RE: related document(s)21 Application for Compensation *with proof of service* for Kevin T Simon, Debtor's Attorney, Period: to, Fee: $4000.00, Expenses: $0. Filed by Attorney Kevin T Simon). (Simon, Kevin) (Entered: 10/16/2013) |
| 10/29/2013 | 23<br>(4 pgs) | Objection to Confirmation of Chapter 13 Plan . (Rojas (TR), Elizabeth (SV)) (Entered: 10/29/2013) |
| 11/04/2013 | 24<br>(1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Bui, Joely Khanh Linh. (Bui, Joely Khanh Linh) (Entered: 11/04/2013) |
| 11/05/2013 | 25<br>(15 pgs) | Declaration re: non opposition *with proof of service* Filed by Debtor Michael Miller (RE: related |

| | | |
|---|---|---|
| | | document(s)21 Application for Compensation *with proof of service* for Kevin T Simon, Debtor's Attorney, Period: to, Fee: $4000.00, Expenses: $0.). (Simon, Kevin) (Entered: 11/05/2013) |
| 11/06/2013 | 26 (2 pgs) | Order Granting Application For Compensation (BNC-PDF) (Related Doc # 21) for Kevin T Simon, fees awarded: $4000.00, expenses awarded: $0.00 Signed on 11/6/2013. (Williams, Jewell) (Entered: 11/06/2013) |
| 11/08/2013 | 27 (3 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)26 Order on Application for Compensation (BNC-PDF)) No. of Notices: 1. Notice Date 11/08/2013. (Admin.) (Entered: 11/08/2013) |
| 11/20/2013 | 28 (8 pgs) | Objection to Homestead Exemption Filed by Trustee Elizabeth (SV) F Rojas (TR). (Rojas (TR), Elizabeth (SV)) (Entered: 11/20/2013) |
| 11/20/2013 | 29 | Hearing Set (RE: related document(s)28 Objection to Homestead Exemption filed by Trustee Elizabeth (SV) F Rojas (TR)) Status hearing to be held on 12/17/2013 at 12:00 PM at Crtrm 302, 21041 Burbank Blvd, Woodland Hills, CA 91367. The case judge is Maureen Tighe (Gonzalez, Emma) (Entered: 11/20/2013) |
| 11/22/2013 | 30 | Hearing Continued (RE: related document(s)13 Chapter 13 Plan filed by Debtor Michael Miller) Confirmation hearing to be held on 12/17/2013 at 09:30 AM at Crtrm 302, 21041 Burbank Blvd, Woodland Hills, CA 91367. The case judge is Maureen Tighe (Williams, Jewell) (Entered: 11/22/2013) |
| 12/04/2013 | 31 (3 pgs) | Objection to Confirmation of Plan Filed by Creditor Loan Servicing, LLC Bayview (RE: related document(s)13 Chapter 13 Plan Filed by Debtor Michael Miller (RE: related document(s)1 Chapter 13 Voluntary Petition . Fee Amount $281 Filed by Michael Miller Schedule A due 09/9/2013. Schedule B due 09/9/2013. Schedule C due 09/9/2013. Schedule D due 09/9/2013. Schedule E due 09/9/2013. Schedule F due 09/9/2013. Schedule G due 09/9/2013. Schedule H due 09/9/2013. Schedule I due 09/9/2013. Schedule J due 09/9/2013. |

| | | |
|---|---|---|
| | | Statement of Financial Affairs due 09/9/2013. Chapter 13 Plan due by 09/9/2013. Statement - Form 22C Due: 09/9/2013. Summary of schedules due 09/9/2013. Declaration concerning debtors schedules due 09/9/2013. Statistical Summary due 09/9/2013. Debtor Certification of Employment Income due by 09/9/2013. Incomplete Filings due by 09/9/2013. (Simon, Kevin) WARNING: Section 316 Incomplete Filings due 10/10/2013. Modified on 8/27/2013.).). (Khajeh, Kiana) (Entered: 12/04/2013) |
| 12/19/2013 | 32 | Hearing Continued Confirmation hearing to be held on 1/28/2014 at 09:30 AM at Crtrm 302, 21041 Burbank Blvd, Woodland Hills, CA 91367. The case judge is Maureen Tighe (Williams, Jewell) (Entered: 12/19/2013) |
| 12/30/2013 | 33 | Hearing Held ON 12/17/13 GRANTED (RE: related document(s)28 Objection to Homestead Exemption filed by Trustee Elizabeth (SV) F Rojas (TR)) (Williams, Jewell) (Entered: 12/30/2013) |
| 02/03/2014 | 34 | Hearing Continued (RE: related document(s)13 Chapter 13 Plan Filed by Debtor Michael Miller Confirmation hearing to be held on 2/25/2014 at 09:30 AM at Crtrm 302, 21041 Burbank Blvd, Woodland Hills, CA 91367. The case judge is Maureen Tighe (Fisher, Liliana) (Entered: 02/03/2014) |
| 02/18/2014 | 35 (3 pgs) | Notice of lodgment *ORDER SUSTAINING TRUSTEE OBJECTIONS TO DEBTOR EXEMPTIONS* Filed by Trustee Elizabeth (SV) F Rojas (TR) (RE: related document(s)28 Objection to Homestead Exemption Filed by Trustee Elizabeth (SV) F Rojas (TR). (Rojas (TR), Elizabeth (SV))). (Rojas (TR), Elizabeth (SV)) (Entered: 02/18/2014) |
| 02/18/2014 | 36 (46 pgs) | Objection to Confirmation of Plan Filed by Creditor Bank of America, N.A. (RE: related document(s)13 Chapter 13 Plan Filed by Debtor Michael Miller (RE: related document(s)1 Chapter 13 Voluntary Petition . Fee Amount $281 Filed by Michael Miller Schedule A due 09/9/2013. Schedule B due 09/9/2013. Schedule C due 09/9/2013. Schedule D due 09/9/2013. Schedule E due 09/9/2013. Schedule F due 09/9/2013. Schedule G due 09/9/2013. Schedule H due 09/9/2013. Schedule I due |

| | | |
|---|---|---|
| | | 09/9/2013. Schedule J due 09/9/2013. Statement of Financial Affairs due 09/9/2013. Chapter 13 Plan due by 09/9/2013. Statement - Form 22C Due: 09/9/2013. Summary of schedules due 09/9/2013. Declaration concerning debtors schedules due 09/9/2013. Statistical Summary due 09/9/2013. Debtor Certification of Employment Income due by 09/9/2013. Incomplete Filings due by 09/9/2013. (Simon, Kevin) WARNING: Section 316 Incomplete Filings due 10/10/2013. Modified on 8/27/2013.).). (Bui, Joely Khanh Linh) (Entered: 02/18/2014) |
| 03/03/2014 | 37 (1 pg) | Order Sustaining the Chapter 13 Trustee Objection to Debtor Exemption (Related Doc # 28 ) Signed on 3/3/2014 (Remy, Johanne) (Entered: 03/03/2014) |
| 03/04/2014 | 38 (7 pgs) | Declaration Setting Forth Postpetition, Preconfirmation Payments On: 1. Deeds of Trust (or Mortgages), 2. Leases of Personal Property; 3. Purchase Money Security Liens on Personal Property Filed by Debtor Michael Miller. (Simon, Kevin) (Entered: 03/04/2014) |
| 03/04/2014 | 39 (5 pgs) | Declaration Setting Forth Postpetition, Preconfirmation Payments On: 1. Deeds of Trust (or Mortgages), 2. Leases of Personal Property; 3. Purchase Money Security Liens on Personal Property Filed by Debtor Michael Miller. (Simon, Kevin) (Entered: 03/04/2014) |
| 03/05/2014 | 40 (2 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)37 Order (Generic) (BNC-PDF)) No. of Notices: 1. Notice Date 03/05/2014. (Admin.) (Entered: 03/05/2014) |
| 03/21/2014 | 41 (1 pg) | Declaration Re: Electronic Filing Filed by Debtor Michael Miller. (Simon, Kevin) (Entered: 03/21/2014) |
| 03/21/2014 | 42 (13 pgs) | Amended Schedule C , Chapter 13 Statement of Current Monthly and Disposable Income *Amended with proof of service* Filed by Debtor Michael Miller. (Simon, Kevin) (Entered: 03/21/2014) |
| 03/21/2014 | 43 (15 pgs) | Amended Chapter 13 Plan *First Amended with Proof of Service* Filed by Debtor Michael Miller (RE: related document(s)13 Chapter 13 Plan Filed by Debtor Michael Miller (RE: related document(s)1 |

| | | |
|---|---|---|
| | | Chapter 13 Voluntary Petition . Fee Amount $281 Filed by Michael Miller Schedule A due 09/9/2013. Schedule B due 09/9/2013. Schedule C due 09/9/2013. Schedule D due 09/9/2013. Schedule E due 09/9/2013. Schedule F due 09/9/2013. Schedule G due 09/9/2013. Schedule H due 09/9/2013. Schedule I due 09/9/2013. Schedule J due 09/9/2013. Statement of Financial Affairs due 09/9/2013. Chapter 13 Plan due by 09/9/2013. Statement - Form 22C Due: 09/9/2013. Summary of schedules due 09/9/2013. Declaration concerning debtors schedules due 09/9/2013. Statistical Summary due 09/9/2013. Debtor Certification of Employment Income due by 09/9/2013. Incomplete Filings due by 09/9/2013. (Simon, Kevin) WARNING: Section 316 Incomplete Filings due 10/10/2013. Modified on 8/27/2013.).). (Simon, Kevin) (Entered: 03/21/2014) |
| 03/24/2014 | 44 (2 pgs) | Withdrawal re: *Objection to Confirmation of Chapter 13 Plan* Filed by Creditor Bank of America, N.A. (RE: related document(s)36 Objection to Confirmation of the Plan). (Bui, Joely Khanh Linh) (Entered: 03/24/2014) |
| 03/25/2014 | 45 (8 pgs) | Declaration Setting Forth Postpetition, Preconfirmation Payments On: 1. Deeds of Trust (or Mortgages), 2. Leases of Personal Property; 3. Purchase Money Security Liens on Personal Property Filed by Debtor Michael Miller. (Simon, Kevin) (Entered: 03/25/2014) |
| 04/01/2014 | 46 (2 pgs) | Withdrawal re: *Objection To Confirmation Of Chapter 13 Plan* Filed by Creditor Loan Servicing, LLC Bayview (RE: related document(s)31 Objection to Confirmation of the Plan). (Khajeh, Kiana) (Entered: 04/01/2014) |
| 05/20/2014 | 47 (37 pgs) | Declaration re: *Declaration of Michael Miller re: Income with proof of service* Filed by Debtor Michael Miller. (Simon, Kevin) (Entered: 05/20/2014) |
| 06/12/2014 | 48 (2 pgs) | Notice Filed by. (Rojas (TR), Elizabeth (SV)) (Entered: 06/12/2014) |
| 09/05/2014 | 49 (2 pgs) | Order Confirming Chapter 13 Plan (BNC-PDF) (Related Doc # 43 ) Signed on 9/5/2014 (Remy, Johanne) (Entered: 09/05/2014) |

| | | |
|---|---|---|
| 09/05/2014 | 50 (3 pgs) | Notice of Requirement to Complete Course in Financial Management (BNC) . (Remy, Johanne) (Entered: 09/05/2014) |
| 09/07/2014 | 51 (3 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)49 Order Confirming Chapter 13 Plan (BNC-PDF)) No. of Notices: 1. Notice Date 09/07/2014. (Admin.) (Entered: 09/07/2014) |
| 09/07/2014 | 52 (4 pgs) | BNC Certificate of Notice (RE: related document(s) 50 Notice of Requirement to Complete Course in Financial Management (BNC)) No. of Notices: 1. Notice Date 09/07/2014. (Admin.) (Entered: 09/07/2014) |
| 10/30/2014 | 53 (3 pgs) | Notice of intent to pay claims . (Rojas (TR), Elizabeth (SV)) (Entered: 10/30/2014) |
| 11/10/2014 | 54 (54 pgs; 2 docs) | Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 9540 Burnet Avenue, North Hills, CA 91343-2309 . Fee Amount $176, Filed by Creditor Bank of America, N.A. (Attachments: # 1 Exhibits) (Domeyer, Mark) (Entered: 11/10/2014) |
| 11/10/2014 | | Receipt of Motion for Relief from Stay - Real Property(1:13-bk-15594-MT) [motion,nmrp] ( 176.00) Filing Fee. Receipt number 38495518. Fee amount 176.00. (re: Doc# 54) (U.S. Treasury) (Entered: 11/10/2014) |
| 11/12/2014 | 55 | Hearing Set (RE: related document(s)54 Motion for Relief from Stay - Real Property filed by Creditor Bank of America, N.A.) The Hearing date is set for 12/3/2014 at 09:30 AM at Crtrm 302, 21041 Burbank Blvd, Woodland Hills, CA 91367. The case judge is Maureen Tighe (Fisher, Liliana) (Entered: 11/12/2014) |
| 12/04/2014 | | Hearing (Bk Motion) Continued (RE: related document(s) 54 MOTION FOR RELIEF FROM STAY - REAL PROPERTY filed by Bank of America, N.A.) Hearing to be held on 01/07/2015 at 09:30 AM 21041 Burbank Blvd Woodland Hills, CA 91367 for 54 , (Fisher, Liliana) (Entered: 12/04/2014) |
| 12/09/2014 | | |

| | | |
|---|---|---|
| | [56](#)<br>(7 pgs) | Application for Compensation *Notice of Application for Supplemental Fees; with proof of service* for Kevin T Simon, Debtor's Attorney, Period: to, Fee: $553.73, Expenses: $6.73. Filed by Attorney Kevin T Simon (Simon, Kevin) (Entered: 12/09/2014) |
| 12/09/2014 | [57](#)<br>(3 pgs) | Notice of motion/application *with proof of services* Filed by Debtor Michael Miller (RE: related document(s)[56](#) Application for Compensation *Notice of Application for Supplemental Fees; with proof of service* for Kevin T Simon, Debtor's Attorney, Period: to, Fee: $553.73, Expenses: $6.73. Filed by Attorney Kevin T Simon). (Simon, Kevin) (Entered: 12/09/2014) |
| 12/22/2014 | [58](#)<br>(4 pgs) | Stipulation By Bank of America, N.A. and *for Adequate Protection* Filed by Creditor Bank of America, N.A. (Domeyer, Mark) (Entered: 12/22/2014) |
| 12/22/2014 | [59](#)<br>(8 pgs) | Notice of lodgment *of Order* Filed by Creditor Bank of America, N.A. (RE: related document(s)[54](#) Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 9540 Burnet Avenue, North Hills, CA 91343-2309 . Fee Amount $176, Filed by Creditor Bank of America, N.A. (Attachments: # 1 Exhibits)). (Domeyer, Mark) (Entered: 12/22/2014) |
| 12/22/2014 | [60](#)<br>(6 pgs) | Order Granting Motion for relief from the automatic stay REAL PROPERTY (BNC-PDF) (Related Doc # [54](#) ) Signed on 12/22/2014 (Gonzalez, Emma) (Entered: 12/22/2014) |
| 12/25/2014 | [61](#)<br>(7 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)[60](#) Motion for relief from the automatic stay REAL PROPERTY (BNC-PDF)) No. of Notices: 1. Notice Date 12/25/2014. (Admin.) (Entered: 12/25/2014) |
| 01/09/2015 | [62](#)<br>(7 pgs) | Application for Compensation *Notice of Application for Supplemental Fees; with proof of service* for Kevin T Simon, Debtor's Attorney, Period: to, Fee: $243.13, Expenses: $6.13. Filed by Attorney Kevin T Simon (Simon, Kevin) (Entered: 01/09/2015) |
| 01/09/2015 | [63](#)<br>(3 pgs) | Notice of motion/application *with proof of services* Filed by Debtor Michael Miller (RE: related |

| | | |
|---|---|---|
| | | document(s)62 Application for Compensation *Notice of Application for Supplemental Fees; with proof of service* for Kevin T Simon, Debtor's Attorney, Period: to, Fee: $243.13, Expenses: $6.13. Filed by Attorney Kevin T Simon). (Simon, Kevin) (Entered: 01/09/2015) |
| 01/09/2015 | 64 (18 pgs) | Declaration re: non opposition *with proof of services* Filed by Debtor Michael Miller (RE: related document(s)56 Application for Compensation *Notice of Application for Supplemental Fees; with proof of service* for Kevin T Simon, Debtor's Attorney, Period: to, Fee: $553.73, Expenses: $6.73.). (Simon, Kevin) (Entered: 01/09/2015) |
| 01/13/2015 | 65 (1 pg) | Order Granting Application For Compensation (BNC-PDF) (Related Doc # 56) for Kevin T Simon, fees awarded: $553.73 Signed on 1/13/2015. (Remy, Johanne) (Entered: 01/13/2015) |
| 01/15/2015 | 66 (2 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)65 Order on Application for Compensation (BNC-PDF)) No. of Notices: 1. Notice Date 01/15/2015. (Admin.) (Entered: 01/15/2015) |
| 01/26/2015 | 67 (18 pgs) | Declaration re: non opposition *with proof of service* Filed by Debtor Michael Miller (RE: related document(s)62 Application for Compensation *Notice of Application for Supplemental Fees; with proof of service* for Kevin T Simon, Debtor's Attorney, Period: to, Fee: $243.13, Expenses: $6.13.). (Simon, Kevin) (Entered: 01/26/2015) |
| 01/28/2015 | 68 (1 pg) | Order Granting Application For Compensation (BNC-PDF) (Related Doc # 62) for Kevin T Simon, fees awarded: $243.13 Signed on 1/28/2015. (Remy, Johanne) (Entered: 01/28/2015) |
| 01/30/2015 | 69 (2 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)68 Order on Application for Compensation (BNC-PDF)) No. of Notices: 1. Notice Date 01/30/2015. (Admin.) (Entered: 01/30/2015) |
| 02/05/2015 | 70 (3 pgs) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Jafarnia, Merdaud. (Jafarnia, Merdaud) (Entered: 02/05/2015) |

| | | |
|---|---|---|
| 02/10/2015 | 71<br>(2 pgs) | Chapter 13 Trustee Periodic Accounting Report . (Rojas (TR), Elizabeth (SV)) (Entered: 02/10/2015) |
| 02/18/2015 | 72<br>(49 pgs; 3 docs) | Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 9414 Moonbeam Avenue #16 . Fee Amount $176, Filed by Creditor Loan Servicing, LLC Bayview (Attachments: # 1 Supplemental Declaration # 2 Exhibit) (Jafarnia, Merdaud) (Entered: 02/18/2015) |
| 02/18/2015 | | Receipt of Motion for Relief from Stay - Real Property(1:13-bk-15594-MT) [motion,nmrp] ( 176.00) Filing Fee. Receipt number 39218979. Fee amount 176.00. (re: Doc# 72) (U.S. Treasury) (Entered: 02/18/2015) |
| 02/19/2015 | 73 | Hearing Set (RE: related document(s)72 Motion for Relief from Stay - Real Property filed by Creditor Loan Servicing, LLC Bayview) The Hearing date is set for 4/1/2015 at 09:30 AM at Crtrm 302, 21041 Burbank Blvd, Woodland Hills, CA 91367. The case judge is Maureen Tighe (Cetulio, Julie) (Entered: 02/19/2015) |
| 02/25/2015 | 74<br>(2 pgs) | Motion to Dismiss Case for Failure to Make Plan Payments Filed by (Rojas (TR), Elizabeth (SV)) (Entered: 02/25/2015) |
| 03/05/2015 | 75<br>(5 pgs) | Opposition to (related document(s): 74 Motion to Dismiss Case for Failure to Make Plan Payments ) *with proof of service* Filed by Debtor Michael Miller (Simon, Kevin) (Entered: 03/05/2015) |
| 03/05/2015 | 76<br>(3 pgs) | Notice of motion/application *with proof of service* Filed by Debtor Michael Miller (RE: related document(s)74 Motion to Dismiss Case for Failure to Make Plan Payments Filed by (Rojas (TR), Elizabeth (SV))). (Simon, Kevin) (Entered: 03/05/2015) |
| 03/06/2015 | 77 | Hearing Set (RE: related document(s)74 Motion to Dismiss Case for Failure to Make Plan Payments) The Hearing date is set for 4/28/2015 at 11:30 AM at Crtrm 302, 21041 Burbank Blvd, Woodland Hills, CA 91367. The case judge is Maureen Tighe (Fisher, Liliana) (Entered: 03/06/2015) |

| | | |
|---|---|---|
| 03/11/2015 | [78](#)<br>(7 pgs) | Application for Compensation *Notice of Application for Supplemental Fees; with proof of service* for Kevin T Simon, Debtor's Attorney, Period: to, Fee: $517.13, Expenses: $6.13. Filed by Attorney Kevin T Simon (Simon, Kevin) (Entered: 03/11/2015) |
| 03/11/2015 | [79](#)<br>(3 pgs) | Notice of motion/application *with proof of service* Filed by Debtor Michael Miller (RE: related document(s)[78](#) Application for Compensation *Notice of Application for Supplemental Fees; with proof of service* for Kevin T Simon, Debtor's Attorney, Period: to, Fee: $517.13, Expenses: $6.13. Filed by Attorney Kevin T Simon). (Simon, Kevin) (Entered: 03/11/2015) |
| 03/18/2015 | [80](#)<br>(6 pgs) | Response to motion for order to terminate, annul, modify or condition the automatic stay and declaration(s) in support (related document(s): [72](#) Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 9414 Moonbeam Avenue #16 . Fee Amount $176, filed by Creditor Loan Servicing, LLC Bayview) *with proof of service* Filed by Debtor Michael Miller (Simon, Kevin) (Entered: 03/18/2015) |
| 04/03/2015 | [81](#)<br>(7 pgs) | Application for Compensation *Notice of Application for Supplemental Fees; with proof of service* for Kevin T Simon, Debtor's Attorney, Period: to, Fee: $574.13, Expenses: $6.13. Filed by Attorney Kevin T Simon (Simon, Kevin) (Entered: 04/03/2015) |
| 04/03/2015 | [82](#)<br>(3 pgs) | Notice of motion/application *with proof of service* Filed by Debtor Michael Miller (RE: related document(s)[81](#) Application for Compensation *Notice of Application for Supplemental Fees; with proof of service* for Kevin T Simon, Debtor's Attorney, Period: to, Fee: $574.13, Expenses: $6.13. Filed by Attorney Kevin T Simon). (Simon, Kevin) (Entered: 04/03/2015) |
| 04/03/2015 | | Hearing (Bk Motion) Continued (RE: related document(s) [72](#) MOTION FOR RELIEF FROM STAY - REAL PROPERTY filed by Loan Servicing, LLC Bayview) Hearing to be held on 04/22/2015 at 09:30 AM 21041 Burbank Blvd Woodland Hills, CA 91367 for [72](#) , (Cetulio, Julie) (Entered: 04/03/2015) |

| | | |
|---|---|---|
| 04/07/2015 | 83 (3 pgs) | Notice of Hearing *(Continued)* Filed by Creditor Loan Servicing, LLC Bayview (RE: related document(s)72 Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 9414 Moonbeam Avenue #16 . Fee Amount $176, Filed by Creditor Loan Servicing, LLC Bayview (Attachments: # 1 Supplemental Declaration # 2 Exhibit)). (Jafarnia, Merdaud) (Entered: 04/07/2015) |
| 04/10/2015 | 84 (18 pgs) | Declaration re: non opposition *with proof of service* Filed by Debtor Michael Miller (RE: related document(s)78 Application for Compensation *Notice of Application for Supplemental Fees; with proof of service* for Kevin T Simon, Debtor's Attorney, Period: to, Fee: $517.13, Expenses: $6.13.). (Simon, Kevin) (Entered: 04/10/2015) |
| 04/14/2015 | 85 (1 pg) | Order Granting Application For Compensation (BNC-PDF) (Related Doc # 78) for Kevin T Simon, fees awarded: $517.13, expenses awarded: $0.00 Signed on 4/14/2015. (Cetulio, Julie) (Entered: 04/14/2015) |
| 04/16/2015 | 86 (2 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)85 Order on Application for Compensation (BNC-PDF)) No. of Notices: 1. Notice Date 04/16/2015. (Admin.) (Entered: 04/16/2015) |
| 04/24/2015 | 87 (18 pgs) | Declaration re: non opposition *with proof of service* Filed by Debtor Michael Miller (RE: related document(s)81 Application for Compensation *Notice of Application for Supplemental Fees; with proof of service* for Kevin T Simon, Debtor's Attorney, Period: to, Fee: $574.13, Expenses: $6.13.). (Simon, Kevin) (Entered: 04/24/2015) |
| 04/27/2015 | 88 (1 pg) | Order Granting Application For Compensation (BNC-PDF) (Related Doc # 81) for Kevin T Simon, fees awarded: $574.13, expenses awarded: $0.00 Signed on 4/27/2015. (Cetulio, Julie) (Entered: 04/27/2015) |
| 04/28/2015 | 89 (6 pgs; 2 docs) | Notice of lodgment Filed by Creditor Loan Servicing, LLC Bayview (RE: related document(s) 72 Notice of motion and motion for relief from the automatic stay with supporting declarations REAL |

| | | |
|---|---|---|
| | | PROPERTY RE: 9414 Moonbeam Avenue #16 . Fee Amount $176, Filed by Creditor Loan Servicing, LLC Bayview (Attachments: # 1 Supplemental Declaration # 2 Exhibit)). (Attachments: # 1 Proposed Order) (Jafarnia, Merdaud) (Entered: 04/28/2015) |
| 04/28/2015 | 98 (1 pg) | ORDER and Notice of dismissal arising from Motion to dismiss chapter 13 (11 U.S.C. Section 1307) - **Debtor** Dismissed.(BNC) (RE: related document(s)6 Meeting (AutoAssign Chapter 13), 54 Motion for Relief from Stay - Real Property filed by Creditor Bank of America, N.A., 58 Stipulation filed by Creditor Bank of America, N.A., 72 Motion for Relief from Stay - Real Property filed by Creditor Loan Servicing, LLC Bayview, 74 Motion to Dismiss Case for Failure to Make Plan Payments, Hearing (Bk Motion) Continued) (Gonzalez, Emma) (Entered: 05/29/2015) |
| 04/29/2015 | 90 (7 pgs) | Application for Compensation *Notice of Application for Supplemental Fees; with proof of service* for Kevin T Simon, Debtor's Attorney, Period: to, Fee: $173.13, Expenses: $6.13. Filed by Attorney Kevin T Simon (Simon, Kevin) (Entered: 04/29/2015) |
| 04/29/2015 | 91 (3 pgs) | Notice of motion/application *with proof of service* Filed by Debtor Michael Miller (RE: related document(s)90 Application for Compensation *Notice of Application for Supplemental Fees; with proof of service* for Kevin T Simon, Debtor's Attorney, Period: to, Fee: $173.13, Expenses: $6.13. Filed by Attorney Kevin T Simon). (Simon, Kevin) (Entered: 04/29/2015) |
| 04/29/2015 | 92 (2 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)88 Order on Application for Compensation (BNC-PDF)) No. of Notices: 1. Notice Date 04/29/2015. (Admin.) (Entered: 04/29/2015) |
| 05/05/2015 | 93 (3 pgs) | Order Granting Motion for relief from the automatic stay REAL PROPERTY (BNC-PDF) (Related Doc # 72 ) Signed on 5/5/2015 (Cetulio, Julie) (Entered: 05/05/2015) |
| 05/07/2015 | 94 (4 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)93 Motion for relief from the automatic stay REAL PROPERTY (BNC-PDF)) No. of Notices: 1. Notice Date 05/07/2015. (Admin.) (Entered: 05/07/2015) |

| | | |
|---|---|---|
| 05/22/2015 | 95 (18 pgs) | Declaration re: non opposition *with proof of service* Filed by Debtor Michael Miller (RE: related document(s)90 Application for Compensation *Notice of Application for Supplemental Fees; with proof of service* for Kevin T Simon, Debtor's Attorney, Period: to, Fee: $173.13, Expenses: $6.13.). (Simon, Kevin) (Entered: 05/22/2015) |
| 05/26/2015 | 96 (1 pg) | Order Granting Application For Compensation (BNC-PDF) (Related Doc # 90) for Kevin T Simon, fees awarded: $173.13, expenses awarded: $ Signed on 5/26/2015. (Fisher, Liliana) (Entered: 05/26/2015) |
| 05/28/2015 | 97 (2 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)96 Order on Application for Compensation (BNC-PDF)) No. of Notices: 1. Notice Date 05/28/2015. (Admin.) (Entered: 05/28/2015) |
| 05/31/2015 | 99 (3 pgs) | BNC Certificate of Notice (RE: related document(s)98 ORDER and Notice of Dismissal arising from Motion to dism Ch 13 (11 U.S.C. Section 1307) (BNC)) No. of Notices: 15. Notice Date 05/31/2015. (Admin.) (Entered: 05/31/2015) |
| 06/08/2015 | 100 (3 pgs) | Notice of Intent to File Trustees Final Report and Account - Chapter 13 Dismissed/Converted . (Rojas (TR), Elizabeth (SV)) (Entered: 06/08/2015) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/13/2015 12:13:28 | | |
| **PACER Login:** | gw0015:2558381:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:13-bk-15594-MT Fil or Ent: filed To: 7/13/2015 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 10 | **Cost:** | 1.00 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
2955 Main Street, 2nd Floor, Irvine, CA 92614

A true and correct copy of the foregoing document entitled (*specify*): **OPOSITION TO MOTION IN INDIVIDUAL CASE FOR ORDER IMPOSING A STAY OR CONTINUING THE AUTOMATIC STAY AND DECLARATION IN SUPPORT OF MOTION IN INDIVIDUAL CASE FOR ORDER IMPOSING A STAY OR CONTINUING THE AUTOMATIC STAY** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____7/17/2015_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

*Debtor's Counsel: Kevin T. Simon, Simon Resnik Hayes LLP, kevin@srhlawfirm.com, KTSimon@Speakeasy.net*
*U.S. Trustee: Office of the U.S. Trustee - Los Angeles, ustpregion16.la.ecf@usdoj.gov*
*Chapter 13 Trustee: Elizabeth F. Rojas, cacb_ecf@ch13wla.com*

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____7/17/2015_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

*Debtor: Michael Dale Miller, 9540 Burnet Avenue, North Hills, CA 91343 (U.S. Mail)*
*Honorable Maureen A. Tighe, 21041 Burbank Boulevard, Suite 324, Woodland Hills, CA 91367 (U.S. Mail)*

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 7/17/2015 | Jeremy Romero | /s/Jeremy Romero |
|-----------|---------------|------------------|
| Date | Printed Name | Signature |

507-9780

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**